649 So.2d 201 (1995)
STATE HIGHWAY COMMISSION OF MISSISSIPPI, Appellant,
v.
Minnie Lee JONES and Husband Oscar Jones, Owners, Appellees.
No. 91-CC-1033.
Supreme Court of Mississippi.
January 19, 1995.
*202 Jerry Campbell, Vicksburg, for appellant.
Marshall E. Sanders, Vicksburg, for appellees.
Before PRATHER, P.J., and PITTMAN and McRAE, JJ.
McRAE, Justice, for the Court:
This appeal arises from the Claiborne County Circuit Court's award of $25,625.00 to Minnie Lee Jones and Oscar Jones, owners of 2.89 acres of real property adjacent to U.S. Highway 61 in Port Gibson, Mississippi, in an eminent domain action against the State Highway Commission for a right-of-way and condemnation.
On appeal, the Highway Commission asserts that the jury's verdict was excessive and against the weight of the evidence; that the trial court erred in allowing the Appellees to produce certain photographs of property not at issue in the case in violation of discovery requests; and the trial court erred in allowing evidence of prices paid by the Highway Commission for other properties as evidence of comparable sales. Finding that the property owners violated our discovery rules concerning photographs, we reverse for a new trial.
The second issue is dispositive of the case and, therefore, is the only issue that warrants analysis. We reverse for a new trial because this Court is unable to determine that introduction into evidence of six photographs of another site not produced in response to pretrial discovery could not have adversely affected the integrity of the verdict returned. The photographs should not have been admitted because they were not disclosed pursuant to both a specific request for photographs and a court order compelling discovery.

FACTS
On March 21, 1991, the Highway Commission, pursuant to its decision to widen Highway 61 in Claiborne County from a two-lane to a four-lane highway filed in the Circuit of Claiborne County a "Petition for Special Court of Eminent Domain." The Highway Commission sought to condemn 2.89 acres of frontage property located along Highway 61 near Port Gibson. In addition to the acreage for the permanent right-of-way, the Highway Commission also claimed as a temporary construction easement another .27 of an acre. This property was a part and parcel of a thirty-three (33) acre tract located north of Port Gibson owned by Minnie Lee Jones and her husband, Oscar Jones. Minnie had lived in a home located on this property since 1976.
Joe Biggers, a project engineer and thirty-year employee of the State Highway Department, testified on behalf of the Highway Commission regarding the real estate in question which consisted of 33.02 acres prior to the taking. After the taking, 29.86 acres remained. Biggers further testified the property consisted largely of hills, valleys and trees. There is a hill located directly in front of the house which the highway department planned "to slope ... on approximately a 3 to 1 slope from the bottom of the ditch to tie into the existing ground." The slope would be dressed with grass and landscaped similar to other property the highway department had worked on in southern Warren County.
Minnie testified she was a twenty-two year resident of Claiborne County who moved onto the property in question in 1976. Minnie had taken photographs of negative results of erosion obtained on similar property in neighboring Warren County because she was afraid that after the highway department took down the hills the same thing would happen to her property.

DISCUSSION
The Joneses failed to disclose responses to (1) the Highway Commission's specific request *203 for production and inspection of, inter alia, photographs and (2) an order entered by the circuit judge compelling discovery. We hold the admission into evidence of six photographs of another site introduced during the landowners' direct examination of Minnie Jones was reversible error.
During the trial, the Joneses, over the Highway Commission's vigorous objection, introduced into evidence six 3 1/2" x 5 1/2" color photographs taken by Minnie. The photographs depicted negative results obtained from the Highway Department's sloping, grading and landscaping of similarly situated property located north along Highway 61 near Yokena in neighboring Warren County. These photographs had not been disclosed to the Highway Commission prior to trial. The Highway Commission claimed "the failure to produce the pictures was a clear violation of the discovery rules." We agree.
The discovery tools, rules and procedures available in other civil proceedings are available in eminent domain proceedings. See Barrett v. State Highway Comm'n., 385 So.2d 627 (Miss. 1980). In Barrett, we held that the Highway Commission was required to respond to discovery by the land owners per M.R.C.P. 34. Now we note that what is sauce for the goose is sauce for the gander. See also, Williams v. Dixie Elec. Power Ass'n., 514 So.2d 332 (Miss. 1987).
The Highway Commission's "Request for Production of Documents" stated: "[P]lease produce for inspection by Petitioner's counsel all documents or demonstrative evidence you plan to enter into evidence during the trial of this cause." See Rule 34(a), M.R.C.P. (1982). Under the "Definitions" portion of the Highway Commission's request for production, the word "documents" is defined as, inter alia, "photographs" and "pictorial representations." The Joneses did not contend they were not properly served with the request for production of documents; rather, they acknowledged as much in paragraph 10 of their brief.
An "Order Compelling Discovery" was entered by the circuit judge on August 8, 1991. It was "ORDERED AND ADJUDGED that the Interrogatories and Requests for Production of Documents as filed by the Petitioner in this cause shall be answered on or before September 5, 1991."
During trial, the Highway Commission voiced a contemporaneous objection to the photographs on the ground they were not produced as requested in its Request for Production of Documents filed on March 21, 1991, six months prior to the day of trial on September 12, 1991. The trial judge implicitly overruled the objection by stating, "proceed on. We are going  the objection is noted and [sic] whatever it is worth as to the jury." At a subsequent point in the proceedings, the court again "noted" the Highway Commission's objection to the photographs and opined: "They will be admitted for whatever weight the jury wants to place upon it."
In response to the Highway Commission's contemporaneous objection, counsel for the Joneses said during trial: "You didn't ask for the pictures." Counsel later said the Highway Commission should have defined what it considered "demonstrative evidence." On appeal, the Joneses' attorney acknowledged that the Highway Commission requested photographs by way of discovery; however, he said they did not produce them because they were non-evidentiary photographs that the Joneses did not previously intend to use at trial. Yet, that is precisely what happened  the photographs were introduced into evidence during the landowners' case-in-chief.
The Highway Commission argued that "[t]he sole purpose of the introduction was to show problems that the Highway Commission had experienced and to lead the jury to believe the Defendants would experience the same problem." The Highway Commission further claimed that it was ambushed and surprised by the introduction of the photographs and had prepared no defense to explain any problems north of the subject property.
The Joneses asserted that the photographs were proffered during their case-in-chief to rebut the testimony of Joe Biggers, the Highway Commission's project engineer, who had testified on direct examination that there were plans to reconfigure, landscape and *204 seed the hill located at the front of the acquisition area.
The Joneses further asserted that the pictures were offered as evidence in rebuttal to testimony and evidence offered by the Highway Commission, and in view of such testimony, it was within the sound discretion of the trial judge to admit the photographs as evidence under the circumstances. However, these photographs were not simply rebuttal testimony, but rather, part of the Joneses' case-in-chief presentation.
There is no room for judicial discretion in this case. The Joneses failed to produce the photographs in response to a specific request for production and an order compelling discovery. The case of Williams v. Dixie Elec. Power Ass'n., 514 So.2d 332 (Miss. 1987), controls the posture of the question presented. In Williams, we held the failure of an electric cooperative to respond to a request for production of all photographs (still or moving) and to seasonably tender surveillance videos to attorneys for Williams, the injured plaintiff, was a violation of discovery rules and constituted one of two reasons for reversal. In rejecting a contention that the surveillance films were offered to rebut the plaintiff's case and that rebuttal evidence is not discoverable, we stated:
This Court has developed strict discovery rules in order to avoid trial by ambush and to insure each party has a reasonable time to prepare for trial. We are committed to the discovery rules because they promote fair trials. Once an opponent requests discoverable material, an attorney has a duty to comply with the request regardless of the advantage a surprise may bring. Harris v. General Host Corp., 503 So.2d 795, 797 (Miss. 1986); Tolbert v. State, 441 So.2d 1374, 1375 (Miss. 1983). As is evident in this case, attorneys are reluctant to abide by discovery rules when they can profit by catching their opponents unaware.
Dixie Electric tried to argue the surveillance films were offered to rebut the plaintiff's case and that rebuttal evidence is not discoverable.
* * * * * *
Neither classifying the films as rebuttal nor continuing the surveillance after trial began changed Dixie Electric's duty to comply with discovery. They had a duty to seasonably produce Thursday's surveillance film. In this case, since Dixie Electric obtained the film so close to trial, it should have given Williams' attorneys notice of them and an opportunity to view them prior to trial.
Since Dixie failed to comply with discovery rules in a meaningful way, the trial judge should not have admitted the films into evidence. Rule 37(b)(2)(B) and (a) M.R.C.P. 1.
Id. at 335-337 (emphasis supplied) (footnote omitted).
In Wallace v. Employers Mutual Casualty Company, 443 So.2d 843, 847-48 (Miss. 1983), this Court held that nondisclosure, after a discovery request, of a prior inconsistent statement of Wallace used by Mutual during cross-examination to impeach the plaintiff's testimony amounted to reversible error. In a request for production and inspection, Wallace asked for: "`All investigative reports concerning plaintiffs and their claim, including but not limited to any statements, sworn or unsworn, or affidavits made by the plaintiffs ...'." 443 So.2d at 848 (emphasis in original).
The statement made by Merelene Wallace to another was not produced for inspection. During Mutual's cross-examination of Mrs. Wallace, the statement was offered to impeach her prior inconsistent statement. Objection was made to its use on the grounds the statement had not been produced pursuant to several discovery requests, specifically a request for production inspection. The trial judge allowed the use of the statement for impeachment purposes. We held that "[d]iscovery requests were made for all statements of the plaintiffs, sworn or unsworn. Since this statement was not disclosed, we hold this nondisclosure error and reverse and remand for a new trial." Id.
Biggers made statements that might have led the jury to either believe or infer that the Highway Department's plan to slope, grade and landscape the Joneses' property constituted a potential improvement as opposed to *205 potential and consequential damage. While the Joneses may have been entitled to refute Biggers' revelations by oral testimony from Minnie, they should not have been permitted to do so by photographs that were not disclosed pursuant to a specific request for production. Such allowance was fundamentally unfair. The lawyer for the Highway Commission, who had no opportunity to prepare a reasoned response, explanation or defense to the photographs, stated that he was not prepared to cross-examine on the pictures because he had no idea what had happened at the site several miles north in Yokena.
The Highway Commission was never informed that the photographs were going to be used, and counsel was not prepared to explain the soil erosion and other problems depicted in the photographs. An explanation was important to the Highway Commission because Minnie testified that the reason she took the photographs was because "I was afraid that after they took my hills down and that was what would happen to my place." Minnie further testified that it had been like that for months and "[t]he best landscaping in the world couldn't help that, unless they do a lot of work." Obviously, the landowner was testifying that the value of the property remaining after the taking would be adversely affected by the likelihood of future problems with erosion  i.e. consequential damages, similar to that portrayed in the photographs.
We reverse because we are unable to say that introduction of the photographs could not have adversely affected the integrity of the verdict returned. Indeed, during closing argument, the attorney for the Joneses told the jury:
[T]here is not a man in Mississippi who know[s] more about real estate in Claiborne [C]ounty than James Hudson. That man is a[n] honorable man. He is not some fly by night trying to come in here and make a fast buck, coming in here and telling you a pack of lies about what this property is worth. These people have a good piece of land and he knows best, based on his experience, what is going to happen to that land. You saw the pictures and you hear Mr. Biggers, basically, well, when we go in and carve it down and the grass doesn't grow and the erosion set it, we will get back to them in the next contract. Hah, hah, hah, you can believe that if you want to. You go up and down 61 and you can see what is happening.
The photographs of another site should not have been admitted into evidence since they were not disclosed pursuant to both a specific request for photographs and a court order compelling discovery. Because we are unable to say that the compensation fixed by the verdict was not affected in some way by the admission into evidence of previously undisclosed photographs, this error requires reversal and a remand for a new trial.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ. concur.