807 So.2d 492 (2002)
Paul CONGLETON, Appellant
v.
SHELLFISH CULTURE, INC. and Employers Insurance of Wausau, Appellees.
No. 2000-WC-01938-COA.
Court of Appeals of Mississippi.
February 12, 2002.
*493 Mark W. Davis, Attorney for Appellant.
Timothy Dale Crawley, Attorney for Appellees.
Before McMILLIN, C.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the Court.
¶ 1. This case comes from the Circuit Court of Harrison County, Honorable John H. Whitfield presiding. Paul Congleton brought this workers' compensation case against Shellfish Culture, Inc. and Employers Insurance of Wausau on February 13, 1997. The administrative law judge found for the defendants, and Congleton appealed his case to the Full Commission. The Full Commission affirmed the administrative law judge's decision, and Congleton then appealed to the Harrison County Circuit Court. The circuit court affirmed the decision of the Full Commission. Congleton now appeals to this Court and raises two issues:
1. WHETHER THE CIRCUIT COURT ERRED IN ITS DETERMINATION THAT THE VIDEO SURVEILLANCE TAPES OFFERED BY THE EMPLOYER AND CARRIER WERE PROPERLY AND TIMELY PRODUCED IN ACCORDANCE WITH THE RULES OF DISCOVERY; AND
2. WHETHER THE CIRCUIT COURT ERRED IN ITS DETERMINATION THAT TREATMENT BY DR. DONALD RAYNER, DR. RICHARD BUCKLEY, AND DR. DIANE ROSS WAS NOT REASONABLE UNDER THE ACT.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. Shellfish Culture operated an oyster producing facility on Cat Island, about six *494 miles off the coast of Gulfport, Mississippi. Congleton had been employed by the company that owned the Cat Island facilities prior to Shellfish Culture for five to six years. When the previous owner closed his business, Shellfish Culture bought the facility, and Congleton went to work for it. Congleton's job was to take part in the growth and harvesting of oysters, and this required heavy manual labor. Congleton worked ten hour days and his weekly wage was $400.
¶ 3. This case deals with two injuries which happened during Congleton's employment at Shellfish Culture. On August 25, 1992, Congleton hurt his lower back while working at Shellfish Culture. Congleton received medical care and continued working after his release. The second accident occurred on June 8, 1993, while taking a passenger boat from Gulfport to the Cat Island facility. Congleton injured his neck and lower back during rough seas, and when the boat arrived, Congleton reported his injury to a company officer. Due to the rough seas, Congleton remained on Cat Island overnight and returned home the next day.
¶ 4. Congleton went to Dr. Mark Shuttleworth, a chiropractor, but discontinued seeing Dr. Shuttleworth after Congleton was referred to Dr. William Hopper. Dr. Hopper is an orthopaedic surgeon, and treated Congleton's neck and lower back pain conservatively. Dr. Hopper testified he began seeing Congleton in August of 1992, after the first accident, and saw him several times in September of 1992. Dr. Hopper testified he did not see Congleton again until June 15, 1993, after the boating accident. Dr. Hopper referred Congleton to Dr. Victor Bazzone, a neurosurgeon, because Dr. Hopper did not treat those types of injuries.
¶ 5. Dr. Bazzone began seeing Congleton as a patient on July 20, 1993. Dr. Bazzone reviewed Congleton's status and ran some tests, which were performed by Dr. Diane Ross. Dr. Bazzone agreed Congleton needed rehabilitative re-training for a different type of employment. However, the two men had a disagreement, and Congleton stopped seeing Dr. Bazzone. Apparently Congleton felt Dr. Bazzone was in "cahoots" with Shellfish Culture's insurance company. Dr. Bazzone felt Congleton had reached maximum medical recovery and released Congleton to return to work on January 30, 1995.
¶ 6. Congleton then went to see his family physician, Dr. Donald Rayner. Dr. Rayner referred Congleton to a neurosurgeon in Biloxi, Dr. Richard Buckley. Dr. Buckley testified Congleton had a preexisting condition in his back which was aggravated by the June 1993 accident. Dr. Buckley testified Congleton should not continue doing offshore work and needed to stay away from heavy labor. Dr. Buckley also testified Congleton had reached maximum medical improvement on January 30, 1995. Congleton also saw Dr. Diane Ross several times during 1996.
¶ 7. Congleton brought suit against Shellfish Culture, Inc., and the administrative law judge heard the case on February 13, 1997. During the trial, evidence was presented proving Congleton had been injured in about eight different accidents between the years 1982 and 1996. It was shown that Shellfish Culture paid Congleton a total of $19,383 in disability benefits from June 18, 1993 to January 30, 1995, when Congleton was released at maximum medical improvement by Dr. Bazzone. Shellfish Culture also paid $10,384.47 of Congleton's medical bills. The administrative law judge found the medical treatment provided by Dr. Rayner, Dr. Buckley, and Dr. Ross to be unreasonable and not the responsibility of Shellfish Culture. Congleton appealed this ruling to the Full *495 Commission, and the Full Commission affirmed the administrative law judge's findings. Congleton then appealed to the Harrison County Circuit Court. The circuit court affirmed the findings of the Full Commission.

STATEMENT OF THE LAW

STANDARD OF REVIEW
¶ 8. "Absent an error of law, where substantial credible evidence supports the Commission's decision, this Court, as well as the circuit court, may not interfere." Smith v. Jackson Const. Co., 607 So.2d 1119, 1124 (Miss.1992). "As to matters of law, our review is de novo, but the interpretation of the Commission of the Workers' Compensation Law is to be accorded great weight and deference." KLLM, Inc. v. Fowler, 589 So.2d 670, 674 (Miss.1991).

ANALYSIS

1. WHETHER THE CIRCUIT COURT ERRED IN ITS DETERMINATION THAT THE VIDEO SURVEILLANCE TAPES OFFERED BY THE EMPLOYER AND CARRIER WERE PROPERLY AND TIMELY PRODUCED IN ACCORDANCE WITH THE RULES OF DISCOVERY.
¶ 9. Congleton raises this issue in regard to an evidentiary ruling made by the administrative law judge prior to the hearing. Congleton argues the administrative law judge was in error for not forcing Shellfish to provide Congleton some videotapes prior to Congleton giving a second discovery deposition. Congleton claims Shellfish did not timely produce the videotapes, and because Congleton was not allowed to see the videotapes, he was unduly prejudiced. Congleton also states this evidence might have been useful for his doctors to view in preparing for their depositions. Shellfish argues the administrative law judge was not in error for allowing the tapes into evidence because it was within the judge's discretion to do so.
¶ 10. On November 13, 1995, Congleton filed a request for production of documents which included requests for videotapes. Shellfish Culture replied on December 21, 1995, that no such videotapes existed. Shellfish Culture then hired a private investigator to put Congleton under surveillance. On June 6, 1996 and July 9-10, 1996, the private investigator videotaped Congleton doing work related activities. These tapes showed Congleton performing several types of work such as tying materials to trucks, supervising construction, framing a structure, squatting, and getting down on his back under a truck. The Commission found the videotape showed Congleton was in no obvious stress. Depositions of the doctors were taken with Dr. Buckley's being taken on July 16, 1996, Dr. Hopper's on August 22, 1996, and Dr. Bazzone's on August 26, 1996.
¶ 11. Shellfish Culture disclosed the existence of the videotapes on August 29, 1996. Congleton filed a motion to compel the production of the videotapes so he could see them prior to his giving a second scheduled deposition. A special hearing was held on November 12, 1996. The administrative law judge held Shellfish could take an update deposition prior to Congleton seeing the surveillance tapes, but Shellfish must produce the tapes after the deposition. The update deposition was taken in December of 1996, and the tapes were produced immediately after the deposition. The trial was held on February 13, 1997.
¶ 12. Congleton claims Shellfish did not timely notify him of the existence of the videotapes and did not timely produce *496 them in accordance with the Mississippi Rules of Civil Procedure.
This Court has developed strict discovery rules in order to avoid trial by ambush and to insure each party had a reasonable time to prepare for trial. We are committed to the discovery rules because they promote fair trials. Once an opponent requests discoverable material, an attorney has a duty to comply with the request regardless of the advantage a surprise may bring.
Williams v. Dixie Elec. Power Ass'n, 514 So.2d 332, 335 (Miss.1987) (citing Harris v. Gen. Host Corp., 503 So.2d 795, 797 (Miss. 1986); Tolbert v. State, 441 So.2d 1374, 1375 (Miss.1983)). See also, K-Mart Corp. v. Hardy, ex rel. Hardy, 735 So.2d 975, 986 (¶ 34) (Miss.1999); State Highway Comm'n of Miss. v. Jones, 649 So.2d 201, 203 (Miss.1995). As mentioned, the videotapes were disclosed on August 29, 1996. The motion to compel hearing was held on November 12, 996 with the trial not occurring until February 13, 1997. Congleton knew of the existence of such tapes in more than ample time prior to trial. Furthermore, he received copies of the tapes prior to the end of 1996. There was no trial by ambush and Congleton had time to prepare for the adversarial affect of the videotapes at trial.
¶ 13. The question then becomes whether the administrative law judge was correct in ruling Shellfish did not have to produce the videos until after Congleton gave his deposition. Mississippi Code Annotated section 71-3-61 (Rev.2000) states:
The commission and its hearing officers shall have power to preserve and enforce order during hearings; to issue subpoenas for, to administer oaths to, and to compel the attendance and testimony of witnesses or the production of books, papers, documents, and other evidence, or the taking of depositions before any designated individual competent to administer oaths; to examine witnesses; and to do all things conformable to law which may be necessary to enable them effectively to discharge the duties of their office.
Miss.Code Ann. § 71-3-61 (Rev.2000). In this case, the administrative trial judge acted in accord with his statutory authority. He controlled the way evidence was discovered in such a way as to be fair to both parties. Shellfish Culture provided notice of the videotapes soon after they came into existence, and the administrative law judge required the videotapes be produced after Congleton's deposition. The power to control when evidence is presented is well within the administrative law judge's statutory power. Id. In addition, the videotapes were provided in advance of the actual trial, giving Congleton an opportunity to allow his doctors to see the videotape and re-depose them. There is no indication Congleton tried to re-depose the doctors, and thus any prejudice to Congleton was caused by himself. Therefore, since the administrative law judge was acting in accord with his statutory power, we affirm as to this issue.

2. WHETHER THE CIRCUIT COURT ERRED IN ITS DETERMINATION THAT TREATMENT BY DR. DONALD RAYNER, DR. RICHARD BUCKLEY, AND DR. DIANE ROSS WAS NOT REASONABLE UNDER THE ACT.
¶ 14. In this issue, Congleton claims the administrative law judge was in error for finding the medical treatment he received from Dr. Rayner, Dr. Buckley, and Dr. Ross was unreasonable under the Mississippi Workers' Compensation Act. Congleton states he was entitled to a choice of physician besides the one recommended by his employers, and those three doctors were his choice. Congleton believes *497 the administrative law judge's decision is not supported by the evidence, and he should be compensated for the care those doctors provided. Shellfish Culture counters by pointing out this Court's standard of review. Shellfish argues the administrative law judge's decision was supported by substantial evidence and should be affirmed.
¶ 15. As stated earlier, we will not disturb a decision of the Workers' Compensation Commission if the findings of fact are supported by substantial evidence and there is no error of law. Dulaney v. National Pizza Co., 733 So.2d 301 (¶ 6) (Miss. Ct.App.1999). Congleton argues the Full Commission made an error of law when it held that Dr. Hopper and Dr. Bazzone were his doctors of choice. Congleton points out a portion of section 71-3-15 of the Mississippi Code Annotated which states:
The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment.
Miss.Code Ann. § 71-3-15 (Rev.2000). Congleton states Dr. Hopper and Dr. Bazzone were doctors recommended by his employer, and that his true doctors of choice were Dr. Rayner, Dr. Buckley, and Dr. Ross.
¶ 16. While this may be so, the statute also provides the worker must get prior approval by his employer, if self insured, or by his employer's insurance carrier before he seeks medical services at the expense of the employer. Miss.Code Ann. § 71-3-15(1) (Rev.2000). There was no evidence indicating Congleton made any such effort to notify or seek approval from his employer for the subsequent medical treatment. In addition, the statute further states employers should pay medical expenses "for such period as the nature of the injury or the process of recovery may require." Miss.Code Ann. § 71-3-15(1) (Rev.2000). Both Dr. Bazzone and Dr. Buckley agreed Congleton had reached his point of maximum medical improvement on January 30, 1995. This evidence supports the view that after Congleton was released from seeing Dr. Bazzone, there was really nothing that could be done to make Congleton's status any better. Thus, any further medical expenses would be unreasonable. This evidence, as well as Congleton's failure to follow the very statute he cites now, supports the view that the Full Commission's findings were supported by substantial evidence. Given the deference we give the Commission's interpretation of laws, and all the preceding evidence, we must therefore affirm as to this issue.

CONCLUSION
¶ 17. The trial court was correct in affirming the findings of the Full Commission. For this reason, we affirm.
¶ 18. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, AND CHANDLER, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. BRANTLEY, J., NOT PARTICIPATING.