958 So.2d 833 (2007)
ADOLPHE LAFONT USA, INC., Legion Insurance Company and the Mississippi Guaranty Association, Appellants
v.
Earmie AYERS, Appellee.
No. 2006-WC-01681-COA.
Court of Appeals of Mississippi.
June 12, 2007.
*835 Robert L. Grant, attorney for appellants.
John Hunter Stevens, attorney for appellee.
Before LEE, P.J., BARNES and CARLTON, JJ.
LEE, P.J., for the Court.

FACTS
¶ 1. Earmie Ayers was awarded workers' compensation benefits after stepping in a hole at Adolphe Lafont, a garment factory in Crystal Springs. Ayers claimed that when she stepped in the hole her weight shifted injuring her back. The injury occurred on November 1, 2001, while Ayers was employed with Adolphe as a bundler. Her job duties included pulling heavy bundles of garments and also some drilling work.
¶ 2. Ayers, a fifty-four year old resident of Crystal Springs, Mississippi, went to work at Adolphe in August 1999 and continued working after her injury until a general layoff due to downsizing of the company in September 2002. Before the layoff, Ayers missed work occasionally to go to the chiropractor after stepping in the hole. After being laid off, she received unemployment benefits for six months. Ayers graduated from high school and has worked in convenience stores and factories mostly in positions which required standing eight hours a day. She claims that before stepping in the hole she had no prior back problems. She stated that after stepping in the hole her back pain progressively got worse from pushing, pulling, and carrying heavy bundles of clothes.
¶ 3. Ayers began seeing Dr. Mitchell Myers for her back pain. He treated her with various analgesics and non-steroidal anti-inflammatory drugs without benefit. An MRI scan revealed an L5-S1 disc protrusion. She saw a chiropractor and went to physical therapy but saw little improvement. When Ayers returned to Dr. Myers's office again with back pain, he determined that it was appropriate to refer her to a neurosurgeon. Dr. Adam Lewis performed surgery on her back on March 19, 2003. In a letter dated October 6, 2004, Dr. Lewis stated to a reasonable degree of medical probability that Ayers would be restricted in her ability to lift objects weighing more than twenty-five pounds, she would be restricted in her ability to stand for periods of time exceeding two hours, she would be restricted in her ability to sit for periods of time exceeding two to three hours, and she would be restricted in her ability to bend and/or stoop. Dr. Lewis recommended that she avoid repetitive bending and stooping. He assigned her a twelve percent permanent partial medical impairment rating to the body as a whole.

*836 PROCEDURAL HISTORY
¶ 4. Ayers filed a petition to controvert with the Mississippi Workers' Compensation Commission against Adolphe and Legion Insurance Company. Adolphe disputed the benefits, claiming that her back pain was not the result of an on-the-job injury. A hearing was held on October 11, 2004, before an administrative law judge (ALJ). On April 11, 2005, the ALJ ordered that Adolphe and Legion Insurance Company pay temporary total disability benefits in the amount of $166.68 a week for two years and permanent total disability benefits of $166.68 a week for the 450 weeks following the two year period. Adolphe and Legion Insurance appealed, and the Commission affirmed the decision of the ALJ on December 21, 2005, but with amendments. One of the amendments corrected a misstatement in the ALJ's opinion, and the other struck the award of temporary total disability benefits. The Commission found that since Ayers was found to be permanently and totally disabled, she was not entitled to an additional award of temporary total disability benefits. On August 31, 2006, the Circuit Court of Copiah County affirmed the amended order of the Commission.
¶ 5. Adolphe Lafont and Legion Insurance now appeal to this Court asserting the following issues: (1) the Commission erred in finding that Ayers provided sufficient and credible evidence of an injury in the course and scope of her employment; (2) the Commission erred in basing its decision on the deposition testimony of Dr. Adam Lewis, whose opinions lacked credibility and were based upon incorrect assumptions as to Ayers's job requirements; (3) Ayers failed to give actual notice of the injury to the employer within thirty days as required under Mississippi Code Annotated Section 71-3-35; (4) the Commission erred in holding that there was sufficient evidence presented at the hearing to show that Ayers had sustained a total loss of wage earning capacity; and (5) the Commission erred in applying the presumption that Ayers had made a claim for a total loss of wage earning capacity due to her inability to return to her former job with the employer.
¶ 6. Finding that the Commission's decision was supported by substantial evidence, we affirm.

STANDARD OF REVIEW
¶ 7. The standard for appellate review of workers' compensation claims is limited. It is well settled that "the Commission is the ultimate fact-finder." Hardin's Bakeries v. Harrell, 566 So.2d 1261, 1264 (Miss.1990). Our review is limited to a "determination of whether or not the decision of the commission is supported by the substantial evidence." McCarty Farms, Inc. v. Banks, 773 So.2d 380, 386-87(¶ 23) (Miss.Ct.App.2000) (quoting Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss. 1991)). "This Court will overturn a Commission decision only for an error of law or an unsupportable finding of fact." Cook v. President Casino, 740 So.2d 963, 966(¶ 16) (Miss.Ct.App.1999) (citation omitted).

DISCUSSION
I. DID THE COMMISSION ERR IN FINDING THAT AYERS PROVIDED SUFFICIENT AND CREDIBLE EVIDENCE OF AN INJURY IN THE COURSE AND SCOPE OF HER EMPLOYMENT?
¶ 8. Adolphe argues that the Commission's decision was not supported by substantial evidence. Adolphe's main source of contention throughout this case has been that Ayers's back pain was not the result of an injury during the course and scope of her employment. The Commission *837 affirmed the following finding by the ALJ:
Claimant presented as a credible and compelling witness with a good past work history. Also other testimony presented lent credence to the claimant's version of events when she was injured falling in a hole present on the concrete workplace floor. Claimant's treating physician, Dr. Adam Lewis found a causal connection between the workplace injury and her current condition.
Adolphe argues that the only evidence of the accident was Ayers's own testimony which was contradicted and unreliable. We find nothing in Ayers's testimony that is contradictory or "unreasonable to the point of unbelievability" as Adolphe claims. We find the ALJ's statement that Ayers was a credible and compelling witness to be supported by substantial evidence. Adolphe points to the testimony of Ayers's supervisor who stated that he first became aware of the injury in December 2002  over a year from the date of the accident  and that no record existed of the accident. However, witnesses for the company did not deny that Ayers told them of an accident but stated that they could not remember. Also, witnesses for the company testified that the floors in the plant were cracked and that someone could fall.
¶ 9. Adolphe also argues that Ayers was untruthful about pre-existing back problems. The complaints of lower back pain Adolphe refers to were from doctor's visits in October 1989, November 2000, and February 2001. No evidence was presented to show that this was the same pain as after the accident or that any prior back pain restricted her ability to work. In fact, Ayers had lower back pain in the past, but the medical affidavits showed that no radiation, no leg symptoms, and no similar problems occurred until after the injury. Another assertion by Adolphe is that the reason Ayers was unable to continue working was more attributable to a quadruple bypass she underwent than to the back pain. However, no medical evidence was presented that she had any disabling problems or permanent restrictions as a result of her heart surgery. Adolphe further alleges that the filing of the claim was a result of a dispute between Ayers and her supervisor over working conditions rather than a work-related injury. We cannot give this assertion any weight as no evidence was presented regarding a dispute or hard feelings between Ayers and her supervisor.
¶ 10. We find that the Commission had substantial evidence to support its finding that Ayers was injured in the course and scope of her employment, and, thus, this issue is without merit.
II. DID THE COMMISSION ERR IN RELYING ON THE DEPOSITION TESTIMONY OF DR. ADAM LEWIS?
¶ 11. Adolphe argues that the Commission erred in basing its decision on the deposition testimony of Dr. Lewis because his opinions lacked credibility and were based upon incorrect assumptions as to Ayers's job requirements given to him by Dr. Myers, the initial referring physician. Dr. Lewis successfully performed an anterior lumbar fusion at the L5-S1 level on Ayers. Adolphe asserts that Dr. Lewis's deposition testimony was vague and his opinions were not given with a reasonable degree of medical probability. We cannot find Dr. Lewis's testimony to be vague or lacking in medical probability. Dr. Lewis found a causal connection between the workplace injury and Ayers's back condition. Upon being questioned about whether Ayers's back problems were work related, Dr. Lewis stated in his deposition:

*838 Well, the evidence that the patient was working at, according to Dr. Myers's letter of November 12th, 2002, was doing a fair amount of heavy lifting and bending and stooping. And if she had a degenerated disc at that time, it would have made her prone to an annular tear and to an injury of protrusion of the low back.
Adolphe claims in its brief that Ayers's job involved no lifting or stooping, and thus Dr. Lewis based his opinions on incorrect assumptions. However, we cannot give weight to Adolphe's argument that Ayers did no strenuous activities such as lifting and stooping. Witnesses for Adolphe stated at the hearing, and Adolphe argues to this Court in other sections of its brief, that "no light" duty positions were available at the Crystal Springs plant while Ayers was employed there; every position involved some type of physical exertion, some less than others. We cannot find the argument that Ayers did no strenuous work credible when Adolphe bases many of its other arguments on the claim that it had no light duty positions at the plant.
¶ 12. We find this issue without merit.
III. DID THE COMMISSION ERR IN FINDING THAT AYERS GAVE PROPER NOTICE TO ADOLPHE OF HER INJURY?
¶ 13. Mississippi Code Annotated Section 71-3-35(1) (Rev.2000) requires that the employer receive actual notice within thirty days after the occurrence of an injury. However, "[a]bsence of notice shall not bar recovery if it is found that the employer had knowledge of the injury and was not prejudiced by the employee's failure to give notice." Miss.Code Ann. § 71-3-35(1). Adolphe argues that Ayers failed to give notice of the injury within thirty days, and it was not until December 2002 when the company found out that she was injured. In addition, Adolphe argues that it was prejudiced because it was unable to control costs of care or document whether the care was reasonable or necessary.
¶ 14. Adolphe called three witnesses in support of its argument that Ayers did not give notice of her injury to the company. Heyward Hodges, president of Adolphe, testified that no report of an injury was prepared or filed, and that it was not until December 2002 when the claim was being filed that the company was made aware of the injury. Martha Jones, the plant manager, also testified that she was not made aware of the injury until December 2002. However, she also testified that "[Ayers] could have mentioned falling in a hole. I just can't say for sure that she did." Jackie Smitherman, the cutting room manager and Ayers's immediate supervisor, testified that he was not made aware of the injury until December 2002. He stated that he knew Ayers was seeing a chiropractor and that the concrete floor in the plant was cracked due to age and deterioration. In conclusion he stated, "I cannot say for sure whether she told me about stepping in a hole or not."
¶ 15. While no uncontradicted testimony was presented that Ayers told her supervisor or employer of the injury, no clear proof was presented that she failed to tell them. The plant manager and her supervisor both admitted that they could not remember whether Ayers told them about stepping in a hole. Her supervisor testified that he knew Ayers was visiting a chiropractor for back pain.
¶ 16. This Court will reverse an order of the Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. Siemens Energy & Automation, Inc. v. Pickens, 732 So.2d 276, 286(¶ 41) (Miss.Ct. App.1999). This Court "will not go behind the fact finding body, `even though that *839 evidence would not convince us were we the fact finders.'" Id. (citing South Cent. Bell Tel. Co. v. Aden, 474 So.2d 584, 589-90 (Miss.1985)). Further, our supreme court has stated many times that "[d]oubtful cases should be resolved in favor of compensation, so as to fulfill the beneficial purposes of the statute." Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 918 (Miss.1989). Given that the Commission is the ultimate fact-finder, we must defer to the Commission's finding that Ayers was a credible witness. Substantial evidence existed to support the Commission's determination that even if Ayers did not notify her employer directly within thirty days, she is not barred from recovery because the employer had sufficient notice of the injury and was not prejudiced.
¶ 17. This issue is without merit.
IV. DID THE COMMISSION ERR IN HOLDING THAT THERE WAS SUFFICIENT EVIDENCE PRESENTED AT THE HEARING TO SHOW THAT AYERS HAD SUSTAINED A TOTAL LOSS OF WAGE EARNING CAPACITY?
¶ 18. Adolphe argues that Ayers retained some ability to earn wages and, thus, should not have been awarded permanent and total disability. We find that the Commission's holding that Ayers sustained a total loss of wage earning capacity is supported by substantial evidence. In order to be deemed permanently totally disabled under Section 71-3-17(a) (Rev.2000), a claimant must show something more than an inability to return to the job existing at the time of injury. McCray v. Key Constructors, Inc., 803 So.2d 1199, 1203(¶ 17) (Miss.Ct.App.2000). To demonstrate total disability, the claimant must show that he has made a diligent effort, but without success, to obtain other gainful employment. Id. The law is clear that once the claimant has made a prima facie case of total disability, the burden shifts to the employer to show that the employee's efforts were not reasonable or constituted a mere sham. Siemens Energy, 732 So.2d at 283-84(¶ 30).
¶ 19. The ALJ found sufficient evidence that the job search efforts undertaken by Ayers were reasonable and not a mere sham. Ayers made inquiries into thirty to forty jobs, filling out applications where available. After reasonable efforts, she was unable to find employment. Adolphe argues that Ayers's "back problem, even if found to be work related, does not prevent the Claimant from pursuing some measure of gainful employment, even if that employment only earns minimum wage." Adolphe's argument has no merit as several of the positions for which Ayers's applied were minimum wage jobs. We find that substantial evidence existed to support a finding that Ayers sustained a total loss of wage earning capacity.
¶ 20. Adolphe next argues that Ayers's heart condition should have been taken into consideration and the benefits should have been apportioned accordingly between the back pain and the heart condition. The basis for this argument seems to be that Ayers filed for Social Security disability benefits shortly after her heart failure and her application was based both on the back injury and heart failure. The fact that her Social Security application included heart problems is not dispositive proof that her workers' compensation benefits should be reduced. Workers' compensation benefits are reduced proportionately only where a pre-existing physical handicap or disease is shown by medical findings to be a "material contributing factor in the results following injury." Miss. Code Ann. § 71-3-7 (Rev.2000). No medical evidence was presented that her heart problems were a "material contributing factor" to her permanent restrictions as to *840 lifting, standing, or sitting. We find Adolphe's argument concerning apportionment and Ayers's wage earning capacity to be without merit.
V. DID THE COMMISSION ERR IN APPLYING THE PRESUMPTION THAT AYERS HAD MADE A CLAIM FOR A TOTAL LOSS OF WAGE EARNING CAPACITY DUE TO HER INABILITY TO RETURN TO HER FORMER JOB WITH THE EMPLOYER?
¶ 21. In its final issue on appeal, Adolphe argues that the ALJ assumed that since Ayers was not offered a light duty position by Adolphe that she is presumed disabled. A reading of the ALJ's decision, affirmed by the Commission, does not support this argument. In addition to stating that Adolphe had no light duty positions available, the ALJ stated that "[t]he assignment by Dr. Lewis and the attendant permanent restrictions would prohibit any return to the positions the claimant occupied in the past." The ALJ also stated that Ayers's "job search efforts were sufficient to be deemed `reasonable' and not a `mere sham' and were proven to be unsuccessful as no one offered the claimant a job." Given that the Commission based its finding of total loss of wage earning capacity on substantial evidence, we find this issue without merit.
¶ 22. THE JUDGMENT OF THE COPIAH COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.