MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Teresa G. Patrick suffered a com-pensable injury to her back while working as a stocker at Wal-Mart, for which she was awarded temporary total disability benefits and later total permanent disability benefits. The central issues brought in
 
 *1121
 
 this appeal are whether the Tate County Circuit Court erred in: (1) affirming the Mississippi Workers’ Compensation Commission’s order, which found that Patrick was permanently and totally disabled, and (2) reversing the Commission’s finding that the treatments provided by Dr. Jerry En-gelberg and Dr. Harry Friedman were within the mandates of medical care as allowed by Mississippi Code Annotated section 71-3-15(1) (Rev.2000), thus finding that the medical bills from those physicians were not the responsibility of the employer and carrier, Wal-Mart and National Union Fire Insurance Company of Pittsburgh, PA, respectively.
 

 ¶ 2. Wal-Mart seeks review of: (1) the finding that it should be held responsible for the medical services provided by Dr. Pravinchandra Patel following Patrick’s second and third surgeries and (2) the finding that Patrick was permanently and totally disabled. By cross-appeal, Patrick seeks review of the circuit court’s reversal of the award of medical fees granted for treatment provided by Dr. Engelberg and Dr. Friedman as they were causally related to the initial work injury and found to be reasonable and necessary. For purposes of judicial economy, some issues on appeal have been combined. Finding no error in the decision of the circuit court, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. This case arises from a work-related injury suffered by Patrick on July 28, 1997. Patrick was working as a grocery stocker for Wal-Mart and injured her back while stocking boxes in a store aisle. She notified her supervisor of the injury and visited the company doctor the next morning. As a result of her injury, Patrick was moved to the accounting department where she continued to suffer from back and leg problems. She continued to see Wal-Mart’s company doctor, but when the pain persisted, she went to her family physician, Dr. Patel, for treatment. After physical therapy failed to correct the injury, Dr. Patel discovered, almost one year after the initial accident, that Patrick had suffered a left-sided L5-S1 disc rupture. Dr. Patel referred Patrick to Dr. Craig Clark. Surgery was performed to remove her ruptured disc on July 14, 1998. Dr. Clark treated Patrick on several occasions after the surgery for continuing pain and ultimately placed Patrick at maximum medical improvement on June 7, 1999. Patrick returned to Dr. Clark for trigger-point injections and pain treatment. Dr. Clark later referred Patrick back to Dr. Patel for continuing treatment, with instructions to consult him if any new problems arose. Dr. Clark confirmed by correspondence that in his opinion, Patrick had a permanent medical impairment of ten percent to the body as a whole.
 

 ¶ 4. After the first surgery, Patrick returned to work in the accounting office at Wal-Mart from October 5 through October 13, 1998; however, she continued to experience discomfort. As a result, Patrick left work and testified that she was told not to return until such time as she was back to “a hundred percent.” Patrick never returned to work for Wal-Mart. The first Commission hearing was held on August 24, 1999. At that hearing, Patrick was awarded temporary total disability benefits at the rate of $187.01 per week from July 8, 1998, and continuing until June 9, 1999. In the order, Administrative Law Judge Linda Thompson based her determination, in part, on testimony from Dr. Clark, finding that Patrick had a permanent medical impairment rating of ten percent to the body as a whole. However, Judge Thompson withheld any determination regarding permanent occupational disability or loss of wage-earning capacity until a later date.
 

 
 *1122
 
 ¶ 5. Patrick, who had only completed the tenth grade, also underwent vocational rehabilitation after her injury to determine what kind of work she was qualified to perform and to obtain her GED, so she could take college courses to improve her education. Patrick additionally testified and presented evidence demonstrating her attempts to successfully return to the work force after her surgery. Patrick acknowledged that she had worked for the Horseshoe Casino for several days, but she was unable to continue because of her back pain. Patrick also acknowledged that she had worked for a clothing shop called Ele-mo Pea from September 2000 until March 2001, where she was given accommodations as a result of her injury. Patrick stated that her back pain continued and would worsen if she sat for long periods of time or tried to bend or lift heavy boxes. Patrick worked approximately three to four hours per day a couple of days a week. However, the shop closed, and Patrick was again out of work. Patrick later obtained a job through the help of a friend as a photographer at PCA Studios from August 2001 until October 2001. Patrick testified that she worked full time, but she was forced to quit this job as a result of ongoing back pain. Patrick testified that the photography job was her most recent job and that she had not worked since.
 

 ¶ 6. Patrick subsequently suffered a disc rupture at the same level as her original injury, but on the right side in 2001 and again in 2002. Each rupture necessitated surgery. The second surgery was performed by Dr. Engelberg on April 5, 2001, and the third surgery was performed by Dr. Friedman on July 30, 2002. Patrick testified that she first attempted to return to Dr. Clark for subsequent surgery on her back, but she was informed that Wal-Mart refused authorization. As a result, Patrick stated that she was referred by Dr. Patel to Dr. Engelberg and then later to Dr. Friedman because those doctors were medical providers available through her husband’s health insurance. Patrick testified that there were no other accidents or injuries to cause the second and third disc ruptures, and her back pain had been ongoing since her initial work-related injury. At the time of the hearing, Patrick walked with a cane and was being prescribed daily pain medication. She testified that she has pain in her back, tegs, tail bone, and she must recline in a chair for most of the day with her feet elevated.
 

 ¶ 7. The Commission found that the two subsequent disc ruptures on Patrick’s right side were both causally connected to the initial work-related injury on July 28, 1997. Further, the Commission found that Patrick was referred to Dr. Engelberg and Dr. Friedman by her treating general physician, Dr. Patel, and Dr. Patel had referred Patrick to her original neurosurgeon, Dr. Clark. As such, the Commission found that these referrals were within the mandates of Mississippi Code Annotated section 71-3-15(1) and should be covered by Wal-Mart. The Commission also found that the continuing treatment by Dr. Patel was both reasonable and necessary. Patrick was later sent by her attorney to Dr. Rahul Vohra for an additional evaluation, and Dr. Vohra then referred Patrick to Dr. Charles Secrest for her bladder and kidney problems. The Commission found that there was insufficient evidence to determine whether Dr. Secrest’s treatment was causally connected or medically necessary to the work-related injury.
 

 ¶ 8. At a subsequent hearing held on September 6, 2005, the Commission determined that Patrick was permanently and totally disabled as a result of her work-related back injury with permanent medical impairment ratings ranging from ten to sixteen percent. As a result, the Commission ordered Wal-Mart to pay permanent,
 
 *1123
 
 total disability benefits of $187.10 beginning July 28, 1997, and continuing for a period of 450 weeks and to pay all reasonable and necessary medical services as her injury may require.
 

 ¶ 9. Wal-Mart subsequently appealed the Commission’s findings to the Circuit Court of Tate County. The circuit court found that Patrick sought medical treatments by Dr. Engelberg and Dr. Friedman without approval as required by Mississippi Code Annotated section 71-3-15(1). Thus, the Commission was found to have erred as a matter of law in finding that Dr. Engelberg’s and Dr. Friedman’s medical expenses were the responsibility of the employer and carrier. The circuit court supported its findings by pointing out that Patrick had failed to present proof that she requested the Commission to require Wal-Mart to provide treatment for her second and third surgeries; proof also established that Patrick failed to inform either Dr. Engelberg or Dr. Friedman that she was seeking treatment based on a work-related injury. In addition, the circuit court determined that Patrick was referred to Dr. Vohra by her attorney; thus, his medical fees were not the responsibility of Wal-Mart. It is from these rulings that both Wal-Mart and Patrick seek review.
 

 STANDARD OF REVIEW
 

 ¶ 10. Absent an error of law, this Court will not overturn a decision of the Mississippi Workers’ Compensation Commission if the Commission’s decision is supported by substantial credible evidence.
 
 Congleton v. Shellfish Culture, Inc.,
 
 807 So.2d 492, 495(118) (Miss.Ct.App.2002) (quoting
 
 Smith v. Jackson Constr. Co.,
 
 607 So.2d 1119, 1124 (Miss.1992)). In other words, “this Court will reverse the Commission’s order only if it finds that order [is] clearly erroneous and contrary to the overwhelming weight of the evidence.”
 
 Chestnut v. Dairy Fresh Corp.,
 
 966 So.2d 868, 870(¶ 2) (Miss.Ct.App.2007) (quoting
 
 Barber Seafood, Inc. v. Smith,
 
 911 So.2d 454, 461(¶ 27) (Miss.2005)). This Court reviews •issues of law de novo, however, “the interpretation of the Commission of the Workers’ Compensation Law is to be accorded great weight and deference.”
 
 Congleton,
 
 807 So.2d at 495(¶ 8) (quoting
 
 KLLM, Inc. v. Fowler,
 
 589 So.2d 670, 675 (Miss.1991)).
 

 DISCUSSION
 

 I. WHETHER THE COMMISSION AND THE CIRCUIT COURT ERRED IN FINDING PATRICK PERMANENTLY AND TOTALLY DISABLED.
 

 ¶ 11. In a worker’s compensation case, a claimant must show by a preponderance of the evidence three elements: “(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability.”
 
 Owens v. Washington Furniture Co.,
 
 780 So.2d 643, 645(¶ 6) (Miss.Ct.App.2000) (citing
 
 Strickland v. M.H. McMath Gin, Inc.,
 
 457 So.2d 925, 928 (Miss.1984)). “Disability is determined by actual physical injury and loss of wage earning capacity.”
 
 Sherwin Williams v. Brown,
 
 877 So.2d 556, 558(¶ 7) (Miss.Ct.App.2004) (citing
 
 Spann v. Wal-Mart Stores,
 
 700 So.2d 308, 312 (Miss.1997)). “In determining whether there has been a loss of wage-earning capacity, the Commission is to evaluate training, education, ability to work, failure to be hired elsewhere, pain, and other medical circumstances.”
 
 Id.
 
 at (¶ 8) (citing
 
 DeLaughter v. South Cent. Tractor Parts,
 
 642 So.2d 375, 379 (Miss.1994)). Additionally, to successfully demonstrate a claimant’s permanent and total disability, it must be shown
 
 *1124
 
 “that [s]he has made a diligent effort, but without success, to obtain other gainful employment.”
 
 Adolphe Lafont USA, Inc. v. Ayers,
 
 958 So.2d 833, 839(¶ 18) (Miss.Ct.App.2007) (citing
 
 McCray v. Key Constructors, Inc.,
 
 803 So.2d 1199, 1203(¶ 17) (Miss.Ct.App. 2000)). Further, “once the claimant has made a prima facie case of total disability, the burden shifts to the employer to show that the employee’s efforts were not reasonable or constituted a mere sham.”
 
 Adolphe Lafont USA Lie.,
 
 958 So.2d at 839(¶ 18) (citing
 
 Siemens Energy & Automation, Inc. v. Pickens,
 
 732 So.2d 276, 283-84(¶ 30) (Miss.Ct.App. 1999)).
 

 ¶ 12. There is a dispute as to whether the Commission, and later the circuit court, properly determined that Patrick was permanently and totally disabled based in part on expert evidence. It has been recognized by this Court that when the Commission considers conflicting medical expert evidence “the court will affirm the commission whether the award-is for or against the claimant.”
 
 Moore v. Indep. Life & Accident Ins. Co.,
 
 788 So.2d 106, 113(¶24) (Miss.Ct.App.2001) (quoting
 
 Kersh v. Greenville Sheet Metal Works,
 
 192 So.2d 266, 269 (Miss.1966)). “The Commission, as fact-finder, is entitled to weigh the competing testimonies and render its decision accordingly, provided that the acceptance of the testimony over that of the other did not result in a decision which was clearly erroneous.”
 
 Id.
 
 (citing
 
 Baugh v. Central Miss. Planning & Dev. Dist.,
 
 740 So.2d 342, 344(¶ 8) (Miss.Ct.App. 1999)). Further, “doubtful cases must be resolved in favor of compensation, so as to fulfill the beneficent purposes of the statute.”
 
 Id.
 
 (citing
 
 Reichhold Chemical, Inc. v. Sprankle,
 
 503 So.2d 799, 802 (Miss. 1987)).
 

 ¶ 13. Wal-Mart argues that Patrick failed to demonstrate a complete loss of wage-earning capacity as a result of her work-related injury. Wal-Mart argues that Patrick’s subsequent return to the work force at the same or higher rate of pay further demonstrated her ability to work after the injury. Wal-Mart notes that Dr. Clark, the physician who performed the first surgery, gave Patrick an impairment rating of ten percent and restricted lifting to thirty pounds. Wal-Mart argues that Dr. Clark determined that the lifting restriction would not be permanent, and she should be able to gradually lift more. In addition, Dr. Clark instructed that Patrick should avoid bending and should be allowed to sit or stand as needed. Wal-Mart claims that the Commission erred in failing to give more weight to the testimony of the work-injury physician, Dr. Clark, rather than her family physician, Dr. Patel, and the medical expert, Dr. Vohra. Wal-Mart also argues that Patrick failed to demonstrate a genuine attempt to return to work; thus, it contends it was error to hold that she was permanently and totally disabled.
 

 ¶ 14. Patrick argues that the evidence presented, including testimony from herself and the vocational experts, established that she made diligent but unsuccessful efforts to obtain work following her injury. Patrick further argued that Dr. Patel, her treating physician, found her to be permanently and totally disabled, and because of this finding, she was not required to go against her doctor’s advice and seek employment.
 

 ¶ 15. In this case, both the Commission and the circuit court found sufficient evidence to determine that Patrick was permanently and totally disabled. From a reading of the record before this Court, we agree. The record supports Patrick’s contention that she made efforts to obtain
 
 *1125
 
 alternate employment, and her continuing back pain prevented her from obtaining successful long-term employment. The Commission cited the following factors which supported the permanent and total disability finding: age, tenth grade education level, work history, failed attempts to return to work, inability to find suitable sustained work, continuing pain, vocational evidence, medical evidence, economical situation where Patrick resides, credibility of the witnesses, and the fact that Patrick has undergone three back surgeries with unsuccessful results. We affirm the award finding Patrick is permanently and totally disabled.
 

 II. WHETHER THE CIRCUIT COURT ERRED IN DETERMINING THAT WAL-MART IS NOT RESPONSIBLE FOR SURGERIES AND TREATMENT PROVIDED BY BOTH DR. ENGEL-BERG AND DR. FRIEDMAN, AND WHETHER THE CIRCUIT COURT ERRED IN DETERMINING THAT WAL-MART WAS RESPONSIBLE FOR SERVICES PROVIDED BY DR. PATEL FOLLOWING THE SUBSEQUENT SURGERIES.
 

 ¶ 16. Mississippi Code Annotated section 71-3-15(1) provides in pertinent part that: “any additional selection of physicians by the injured employee or further referrals must be approved by the employer, if self-insured, or the carrier prior to obtaining the services of the physician at the expense of the employer or carrier.” Further, section 71-3-15(1) provides the proper procedure to follow if the employer or carrier refuses the request by the injured employee for an additional referral. Specifically, “the injured employee may apply to the commission for approval of the additional selection or referral, and if the commission determines that such request is reasonable, the employee may be authorized to obtain such treatment at the expense of the employer or carrier.”
 
 Id.
 

 ¶ 17. Both Wal-Mart and Patrick seek a determination of whether the subsequent two back surgeries in 2001 and 2002 were outside the mandates of the Mississippi Workers’ Compensation Act and whether those surgeries were causally related to the initial work-related injury. Wal-Mart argues that the two subsequent surgeries were not causally related, pointing out that she failed to notify the two additional neurosurgeons about her initial work-related injury. Wal-Mart also asks whether it should be required to pay Dr. Patel’s medical services provided as a result of the second and third surgeries. Wal-Mart argues that since the circuit court found these subsequent surgeries were performed without approval pursuant to section 71-3-15(1), any treatment provided by Dr. Patel as a result of these two surgeries should also be excluded. Wal-Mart argues that it should not be held responsible for any treatment provided after June 7, 1999, the MMI date for the initial work-related injury.
 

 ¶ 18. Patrick counters that the second and third surgeries were causally related and that Wal-Mart should be held responsible for those services. Patrick argues that there was no requirement to seek approval from an employer or the Commission before having the second and third surgeries performed. Patrick argues that the original order from the Commission provided for continuing medical services, which would include the subsequent two surgeries Patrick underwent. Patrick further contends that both Dr. Engelberg and Dr. Friedman should be considered “initial specialists” within the meaning of section 71-3-15 because her treating doctor referred her to both of these physicians after Wal-Mart’s alleged refusal to authorize
 
 *1126
 
 treatment from Dr. Clark. Finally, Patrick argues the circuit court erred in failing to recognize that the surgery was an emergency matter because of the seriousness of her back problems.
 

 ¶ 19. While the Commission found that Wal-Mart should be held responsible for any expenses related to the services provided by Dr. Friedman and Dr. Engelberg, the circuit court reversed that decision. The circuit court found that Dr. Patel was Patrick’s original treating physician and that Dr. Patel referred Patrick to Dr. Clark, a neurosurgeon, for her initial back surgery. Therefore, the circuit court found that any additional referral by Dr. Patel to other neurosurgeons required Patrick to get prior approval before proceeding because only one referral per specialty is allowed under the statute. In this case, the circuit court determined that Patrick presented no evidence to the Commission showing that she had asked her employer or the Commission for approval or assistance before proceeding with the additional surgeries.
 

 ¶ 20. The circuit court found that under
 
 Wesson v. Fred’s Inc.,
 
 811 So.2d 464, 467(¶ 9) (Miss.Ct.App.2002), prior approval is required for additional referrals, in this case, for the additional referrals to the two additional neurosurgeons.
 
 Wesson
 
 states that “[t]he purpose of the statutory procedure for seeking medical treatment and permitting referrals from those initial physicians must in part be to systematize the means by which medical costs are to be imposed on an employer.”
 
 Id.
 
 at 468(¶ 15). Further, “[w]hen one party is responsible for another party’s expenses, it is critical that some controls exist.”
 
 Id.
 
 Thus, the circuit court found that Patrick’s failure to show any evidence of her effort to obtain approval for the second and third surgeries prevented her from successfully obtaining an award for those services.
 

 ¶21. Further, the initial surgery occurred on July 14, 1998. Her date of maximum medical improvement was found by the Commission to be June 7, 1999. The next surgery was not performed until April 2001. The order from the Commission required the payment of reasonable and necessary medical expenses, which did include services provided by her treating physician, Dr. Patel, even after the date of her MMI as it related to her ongoing back problems. Patrick clearly had ongoing back problems before her additional two back surgeries, so this Court affirms the judgment of the circuit court finding Wal-Mart responsible for services provided by Dr. Patel. However, we agree that referrals to additional neurosurgeons did require prior approval from either her employer or the Commission, according to the statute. As Patrick failed to demonstrate any evidence that she was denied approval or sought assistance from the Commission, we find that the circuit court did not err in finding that Wal-Mart was not responsible for the medical expenses of Dr. Friedman and Dr. Engelberg.
 

 III. WHETHER THE LAST INJURIOUS EXPOSURE RULE APPLIES.
 

 ¶ 22. As this Court finds that the circuit court was correct in its reversal of the award of medical fees associated with the medical surgeries provided by Dr. Friedman and Dr. Engelberg, there is no need to review this particular issue raised by Wal-Mart.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF TATE COUNTY IS AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANTS/CROSS-APPELLEES AND THE APPELLEE/CROSS-APPEL-LANT.
 

 
 *1127
 
 KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.