919 So.2d 995 (2005)
Ronald E. HAVARD, Appellant
v.
TITAN TIRE CORPORATION OF NATCHEZ and Ace American Insurance Company, Appellees.
No. 2004-WC-00454-COA.
Court of Appeals of Mississippi.
June 28, 2005.
*996 Jeffrey Todd Waycaster, Natchez, attorney for appellant.
Gilson Davis Peterson, Jackson, attorney for appellee.
Before KING, C.J., IRVING and GRIFFIS, JJ.
KING, C.J., for the Court.
¶ 1. Ronald E. Havard appeals the decision of the Adams County Circuit Court affirming the Mississippi Workers' Compensation Commission which determined that Havard be paid temporary total disability benefits and receive medical services reasonably necessary to the treatment of his injury and recovery. Aggrieved by this decision, Havard raises the following issues which we quote verbatim:
I. The extent, if any, to which the Claimant is entitled to additional indemnity benefits beyond the stipulated date of maximum medical improvement for Permanent Total Disability.
II. The extent, if any, to which the Claimant is entitled to additional indemnity benefits beyond the stipulated date of maximum medical improvement for Permanent Partial Disability.
III. Whether the Employer/Carrier is liable for payment of medical expenses in addition to those already paid for medical treatment related to the stipulated compensable injury.

FACTS
¶ 2. In January 1999, Havard was hired as a tire builder at Titan Tire, a tire factory located in Natchez. Havard's job at the plant was to load raw materials onto a machine and build a "green tire." On August 4, 1999, while working at the plant, Havard "tripped over raw materials and hit his head on the floor," causing him to be injured. Havard was forty-six years of age at the time of the incident, with an eleventh grade education. He had previously worked as a cook, a bartender, a milkman, and had performed work involving building fences. Havard owned a fresh produce distributorship for approximately eight years prior to working with Titan Tire.
¶ 3. Havard was transported to the emergency room at Natchez Community Hospital. Upon being released, Havard went to see his family physician, Dr. David Hall. Havard complained of having experienced dizziness, nausea, and confusion after the incident. Havard stated that he had psychological difficulties prior to the injury (bipolar disorder-he had been taking medication for the disorder prior to the incident). Havard was later referred to Dr. Lawrence Hill, a psychiatrist.
¶ 4. Havard's initial visit with Dr. Hill was September 3, 1999. Havard stated that Dr. Hill explained to him that he was *997 having "anxiety disorder and memory problems" because he took a "blow to the head." In Dr. Hill's letter to Havard's attorney dated March 9, 2000, Dr. Hill indicated that Havard suffered from "Anxiety Disorder Secondary to Closed Head Injury." Dr. Hill treated Havard for his work-related injury as well as his pre-existing disorder. Havard was prescribed various types of medication for his symptoms by Dr. Hill (Buspar  anxiety medication, Risperdal  keeps him calm).
¶ 5. Havard indicated that Dr. Hill had discussed the possibility of him returning to work. Havard stated that "He (Dr. Hill) discussed with me that the kind of work I was doing and operating machinery of any kind was dangerous with the problem, with the memory loss and the black outs and the confusion." In his letter to Havard's attorney, Dr. Hill stated "There is little doubt that his residual symptomatology would negate any possibility of his returning to the type of work he did previously. His problems with attention, concentration, and focus as well as short periods of dissociation would be very dangerous in operating any type of machinery."
¶ 6. Havard stated that he has not sought any other work since the injury because it was difficult for him to get through the day.
¶ 7. Havard's mother testified that since the injury, he has not been able to perform routine activities such as cleaning his laundry or performing any tasks in sequence.
¶ 8. Titan Tire and its insurance carrier requested that Havard be evaluated by Dr. Mark Webb, another psychiatrist. Dr. Webb performed an evaluation of Havard on May 31, 2000. In Dr. Webb's deposition taken April 19, 2001, he indicated that he disagreed with Dr. Hill's diagnosis of Havard regarding the anxiety disorder due to head injury. Dr. Webb thought that Havard's "head injury was not that severe." Dr. Webb stated that Havard's injury was a "stressor" for his bipolar disorder. Dr. Webb indicated that his opinion, based on "a reasonable degree of medical probability," was that Havard did not suffer from anxiety disorder due to postcerebral concussion. Dr. Webb's diagnosises were "bipolar disorder manic in remission," "substance abuse in general terms," and "dependent personality traits." Dr. Webb indicated that the dependent personality traits and substance abuse were not related to the work-related injury. Dr. Webb also stated that the work-related injury "aggravated this underlying condition of bipolar disorder," and that aggravation would have ceased by November 4, 1999, based upon a reasonable degree of medical probability. Dr. Webb indicated that Havard does "not suffer with any psychiatric work restrictions as a result of any work-related injury." Dr. Webb testified that any further psychiatric or psychological treatment that Havard may receive after November 4, 1999 is not related to the work-related injury of August 4, 1999.
¶ 9. On April 23, 2001, the administrative law judge ordered an independent medical examination of Havard. Dr. Philip Merideth was selected to conduct the examination.
¶ 10. On June 9, 2001, Dr. Merideth evaluated Havard. Dr. Merideth indicated Havard's diagnosis as bipolar disorder, anxiety disorder, polysubstance dependence, and mild memory impairment due to multiple factors. Dr. Merideth stated that the bipolar disorder, anxiety disorder, and polysubstance dependence occurred prior to August 4, 1999. Dr. Merideth stated that, based on the information made available to him, Havard reached maximum medical improvement on or about March 9, 2000 regarding his work-related *998 injury. Dr. Merideth indicated that Havard did not require further medical treatment for symptoms related to the work-related injury. Dr. Merideth stated that Havard had the ability to work if he chose to do so and that he is "not disabled to work as a result of the accident in question." Dr. Merideth indicated that if Havard returned to work that he should not work in a setting which required him to rely heavily on his memory.
¶ 11. Havard filed his petition to controvert on July 31, 2000, regarding the injuries caused by his fall at work on August 4, 1999. On November 28, 2001, a hearing was held to determine (1) whether Havard's psychological difficulties resulted in a loss of wage earning capacity and (2) whether Titan Tire and its insurance carrier were obligated to provide continuing medical treatment for Havard's psychological difficulties. Prior to the hearing, the parties stipulated to the following: (1) that the claimant suffered a compensable closed head injury on August 4, 1999, (2) that the claimant's average weekly wage at that time was $421.85, (3) that the claimant reached maximum medical improvement from that injury on March 9, 2000, (4) that the claimant was paid temporary total disability benefits, indemnity benefits in the amount of $292.86 a week for the period from August 4, 1999 through July 28, 2000, and (5) that all related medical expenses had been paid by Titan at least through June 1, 2000.
¶ 12. On March 19, 2002, the administrative judge ordered that Havard receive temporary total disability benefits from August 4, 1999 through March 9, 2000, and that Havard receive medical services and supplies which may be reasonably necessary to the treatment of his injury and recovery.
¶ 13. On April 4, 2002, Havard appealed that decision to the Full Commission which affirmed the order of the administrative judge on August 6, 2002.
¶ 14. On September 5, 2002, Havard appealed to the circuit court which affirmed the decision of the administrative judge and the Commission on January 28, 2004.

ISSUES AND ANALYSIS

I.

Whether Havard is entitled to additional indemnity benefits beyond the stipulated date of maximum medical improvement for Permanent Total Disability.

Standard of Review
¶ 15. "The findings and order of the Workers' Compensation Commission are binding on this Court so long as they are `supported by substantial evidence.'" Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994). "This is so, even though the evidence would convince this Court otherwise, were we the factfinder." Id. "This Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence." Id.
¶ 16. Pursuant to Mississippi Code Annotated Section 71-3-3(i) (Rev.2000), "`Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings." If Havard "successfully establishes a disability and the injury suffered is not specifically scheduled by the Workers' Compensation statute, the claimant's disability is measured by loss of wage-earning capacity." Georgia Pacific Corp. v. Taplin, 586 So.2d *999 823, 828 (Miss.1991). Where a claimant attempts to show a permanent total disability that does not involve the loss of certain scheduled members, the matter of "permanent total disability shall be determined in accordance with the facts." Mississippi Code Annotated Section 71-3-17(a) (Rev.2000).
¶ 17. Havard asks this Court to determine whether he is entitled to benefits beyond the date of maximum medical improvement for permanent total disability.
¶ 18. In the present case, a letter dated March 9, 2000, written by Dr. Hill indicated that Havard had probably reached maximum medical benefit from his regimen. However, Dr. Hill stated that there were still prevailing symptoms which may be permanent. Dr. Hill also stated that Havard's problems with "attention, concentration, and focus as well as short periods of dissociation would be very dangerous in operating any type of machinery."
¶ 19. According to Dr. Webb's deposition, he was of the opinion that Havard did not have any psychiatric work restrictions as a result of any work-related injury, and that he was not aware of any physical limitations which might provide any work restrictions. Dr. Webb also indicated that it would be healthy for Havard to return to some sort of genuine work activity.
¶ 20. Dr. Merideth, the independent medical examiner, stated that Havard had the ability to work if he chose to do so. Dr. Merideth also stated that Havard had experienced an impairment in his memory since his accident at work on August 4, 1999, but he could not determine whether the impairment was due to his work-related injury.
¶ 21. Having viewed the record before us, this Court finds that the Commission's decision was supported by substantial evidence, and is thus entitled to be affirmed.

II.

Whether Havard is entitled to additional indemnity benefits beyond the stipulated date of maximum medical improvement for Permanent Partial Disability.
¶ 22. Havard asks this Court to consider whether he should be entitled to permanent partial disability benefits beyond the date of maximum medical improvement, in the alternative, should the Court find that he is not entitled to permanent total disability benefits. He claims that the Commission's decision is not supported by substantial evidence.
¶ 23. To establish that Havard is entitled to permanent partial disability benefits pursuant to Mississippi Code Annotated Section 71-3-3(i) (Rev.2000), he must show that he has sought work but has been unable to obtain the same or similar type of employment. Upon reaching maximum medical recovery, Havard must also show that he reported back to Titan Tire and Titan Tire refused to reinstate or rehire him. Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1226 (Miss.1997). The burden is then shifted to Titan Tire to prove that Havard has suffered a partial disability or that he has not suffered a loss of wage earning capacity. Id.
¶ 24. In this case, Havard claims that (1) the medical evidence shows that he cannot return to his prior job and (2) it is his sincere belief that he is incapable of performing any other employment based on the medical evidence. Havard cites to Dr. Hill's letter dated March 9, 2000, which indicated that it would be dangerous for him to operate any type of machinery and possibly return to the type of work he did previously. Havard also argues that he did not seek other employment due to *1000 the medical consultations with his treating physician. Havard thought that he was incapable of performing any other type of job and therefore did not seek other employment.
¶ 25. Based on the evidence provided, this Court finds that substantial evidence was provided to affirm the Commission's decision.

III.

Whether the Employer/Carrier is liable for payment of medical expenses in addition to those already paid for medical treatment related to the stipulated compensable injury.
¶ 26. Havard contends that the employer/carrier should be liable for payment of continuing medical treatment pursuant to Mississippi Code Annotated Section 71-3-15(1) (Rev.2000). Mississippi Code Annotated Section 71-3-15(1) states in part:
(1) The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require. The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment.
¶ 27. In this case, Dr. Merideth indicated that Havard did not require additional medical treatment for any symptoms due to the head injury which he sustained at work. Dr. Merideth stated that Havard was in need of continued medical treatment for bipolar disorder, anxiety disorder, and polysubstance dependence, "all of which predated his work-related injury."
¶ 28. Dr. Hill stated that Havard had reached maximum medical improvement from the "present regimen" on or about March 9, 2000. Dr. Webb indicated that Havard "would have reached maximum medical improvement from any psychiatric aspect of [the] August 4, 1999 injury by November the 4th of 1999."
¶ 29. While the record reflects conflicting opinions from the various physicians, this Court must affirm the Commission's findings which were supported by substantial evidence. Vance, 641 So.2d at 1180.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.