MYERS, P.J.,
for the Court.
¶ 1. Sally Howell suffered an admittedly work-related injury during the course and scope of her employment with Neshoba County General Hospital (Neshoba General). The administrative law judge’s findings and award of permanent partial disability were adopted by the Mississippi Workers’ Compensation Commission and *1297 affirmed by the Neshoba County Circuit Court. At issue on appeal is whether substantial evidence supported the Commission’s finding that Howell suffered a loss of wage-earning capacity and its calculation and apportioning of the benefits awarded. Finding no error, we affirm.
FACTS
¶ 2. On July 29, 2003, Howell was employed as an LPN at Neshoba General when she injured her arm and neck catching a patient who was falling from a hospital bed. At that time, Howell was limited to lifting twenty or thirty pounds because of a prior neck injury; the instant injury ultimately left Howell limited to sedentary work and unable to lift more than ten pounds. Neshoba General admitted com-pensability, but it disputed the existence and extent of permanent disability and loss of wage-earning capacity attributable to the injury.
¶ 3. At the hearing before the administrative law judge, Howell testified that she wears a back brace as a result of her injuries and continues to have radiating pain in her neck and left arm. She further testified that she takes several prescription medications for pain and to aid in sleeping, but only in the evenings because the medicines interfere with her ability to work. As a result, she is unable to do basic household chores or care for her three children as she did before the injury.
¶4. Following the injury, Howell continued to work for Neshoba General for several months, but she ultimately left because she was not able to meet the physical demands of the job. She then worked for a Dr. Soriano,[1] where her duties entailed only patient intake, recording medications, and assisting with lab work. In September 2004, Howell underwent surgery related to the instant injury, and she did not return to work for Dr. Soriano afterward. In March 2005, Howell reached her maximum medical improvement.
¶ 5. In August 2005, Howell met with Bruce Brawner, a vocational rehabilitation expert. He later testified that prior to the instant injury, Howell was no longer able to perform 57.8% of the total jobs she would be otherwise qualified for. Following her injury at Neshoba General, she would be physically incapable of performing 83% of the total jobs that would otherwise be available to her. He further testified that based on her limitations, she was no longer able to perform any of her relevant past work. Brawner estimated the wages available in the potential jobs he located to be between $313.20 and $514.00 per week.
¶ 6. Although Howell followed up on the majority of the available jobs Brawner had located, she ultimately found work on her own initiative at the Choctaw Health Center in December 2005, less than two months before the hearing before the administrative law judge. Howell had applied for three LPN positions at Choctaw, but she was unable to meet the physical requirements. However, Choctaw was able to offer her a temporary position with modified duties to accommodate her physical restrictions. The temporary job paid $12.85 per hour or $514.00 per week, but it did not offer any benefits.
117. The administrative law judge found that Howell had suffered a loss of 70% of her wage-earning capacity, apportioning 30% to the prior injury, and ordered that Neshoba General pay partial disability benefits of $123.25 for a period of 450 weeks, subject to the statutory maximum. The Commission adopted the findings of the administrative law judge, and the circuit court affirmed the decision of the *1298 Commission. Neshoba General now appeals, arguing that no substantial evidence supported (1) the Commission’s finding that Howell suffered a loss of wage-earning capacity or (2) its calculation and apportioning of the benefits awarded.
STANDARD OF REVIEW
¶ 8. Absent an error of law, this Court will not overturn a decision of the Commission if it is supported by substantial credible evidence. Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss. 1992). A Commission decision that is supported by substantial evidence may not be overturned even if, were this Court acting as fact-finder, we would have x’eached the opposite conclusion. Vance v. Twin River-Homes, Inc., 641 So.2d 1176, 1180 (Miss. 1994). In other words, “this Court will reverse the Commission’s order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.” Chestnut v. Dairy Fresh Corp., 966 So.2d 868, 870(¶ 2) (Miss.Ct.App.2007) (quoting Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461(¶27) (Miss.2005)). Furthermore, decisions as to loss of wage-earning capacity are “largely factual and [are] to be left largely to the discretion and estimate of the commission.” Bryan Foods, Inc. v. White, 913 So.2d 1003, 1010(¶ 28) (Miss.Ct.App.2005) (quoting Vardaman S. Dunn, Mississippi Workmen’s Compensation § 68 (3d ed.1982)).
DISCUSSION
1. Whether substantial evidence supports the Commission’s determination that Howell rebutted the presumption of no loss of wage-earning capacity.
¶ 9. Where a claimant’s actual post-injury wages equal or exceed her pre-injury wages, a rebuttable presumption arises that the claimant has experienced no loss of wage-earning capacity. Gen. Elec. Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987). To rebut this presumption, the claimant must show that the post-injury wages are an unreliable indicator of post-injury wage-earning capacity by evidence that may include an “[i]ncrease in general wage levels since the time of accident; claimant’s own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings.” Howard Indus. v. Robinson, 846 So.2d 245, 256(¶ 37) (Miss.Ct.App.2002) (citation omitted).
¶ 10. Howell’s post-injury wages were approximately $50 per week greater than her wages prior to the instant injury. The Commission found this to be an unreliable indicator of Howell’s wage-earning capacity because it was a temporary position without benefits. Howell had undertaken an extensive job search and applied for three LPN positions at Choctaw Health Center over the course of her search, but she was unable to secure a permanent position because of her medical restrictions. Neshoba General argues that the Commission erred because Howell admitted on cross-examination that she worked forty hours per week, did not know when her temporary employment would end, and had stopped submitting job applications to other potential employers.
¶ 11. Howell’s admissions notwithstanding, we cannot say that the Commission’s finding is not supported by substantial evidence. Howell testified that her job at Choctaw Health Center was temporary, and nothing elicited on cross-examination necessarily contradicted that. Furthermore, the evidence established that Howell had undertaken a long job search and that the permanent jobs still available within her medical restrictions, by and large, *1299 would pay significantly less than her pre-injury wages. Therefore, this assignment of error is without merit.
2. Whether substantial evidence supports the Commission’s calculation of benefits and its method of apportioning those benefits.
¶ 12. Neshoba General has essentially raised three distinct questions within this issue, so we will address each individually.

A. Apportionment of Benefits

¶ 13. The Commission adopted the administrative law judge’s findings that Howell had suffered a 70% loss in wage-earning capacity, subject to apportionment with 30% owing to the prior injury. Nesh-oba General argues that apportionment should have been calculated based on the vocational expert’s testimony as to how much the instant injury had reduced Howell’s access to all the jobs she would be otherwise capable of performing.[2] However, Neshoba General has cited no authority for this proposition. Our supreme court has, in fact, held that:
[T]he degree of contribution is not often susceptible of exact proof, with mathematical accuracy. The commission has a reasonable discretion in apportioning the contribution of the preexisting condition. That percentage is a matter left largely to the sound discretion of the commission, to be exercised in view of all the circumstances, and upon a fair view of all of the facts. Its conclusion on the degree of contribution is a determination of a question of fact, and will not be changed unless it is not supported by substantial evidence, or is manifestly wrong.
Se. Constr. Co. v. Dependent of Dodson, 247 Miss. 1, 15, 153 So.2d 276, 283 (1963). Prior to the instant injury, Howell was precluded from lifting more than twenty pounds; following the injury, she suffers from great pain, cannot lift more than ten pounds, and is limited to sedentary work. In view of all the circumstances, we cannot say the Commission’s decision was unsupported by substantial evidence.

B. Compliance with Statute in Calculating Benefits

¶ 14. Neshoba General argues that the Commission failed to follow Mississippi Code Annotated section 71 — 3—17(c)(25) (Rev.2000), which provides that the compensation for permanent partial disability “shall be sixty-six and two-thirds percent ... of the difference between his average weekly wages ... and his wage-earning capacity thereafter....” Neshoba General points to the findings of the administrative law judge, as adopted by the Commission, which do not make an explicit finding of Howell’s wage-earning capacity after the instant injury or elaborate on how the benefits awarded were calculated. On our review of the record, it is apparent that the Commission did follow the statute in determining the benefits awarded.
¶ 15. The Commission found that Howell had suffered a 70% loss of wage-earning capacity, with 30% apportioned to the prior injury; therefore, a 40% loss of wage-earning capacity was compensable. It implicitly found that Howell’s prior wage-earning capacity was equal to her weekly wage before the instant injury— $462.18; thus, it found Howell’s effective wage-earning capacity following the instant injury to be 60% of $462.18, or approximately $277.31. Subtracting the present wage-earning capacity ($277.31) from the pre-injury wages ($462.18) gives $184.87. Further reducing that to the *1300 statutory two-thirds, we arrive at $123.25, the exact weekly benefit awarded by the Commission.

C. Substantial Evidence for Calculating Benefits

¶ 16. Finally, Neshoba General asserts that no substantial evidence existed for the Commission to determine that Howell suffered a 70% loss in wage-earning capacity. Neshoba General points to the uncontra-dicted testimony of the vocational rehabilitation expert that the weekly wages for the potential jobs he had located were between $313.20 and $514.00. Neshoba General, thus, argues that the Commission could not find a post-injury wage-earning capacity below $313.20. However, our supreme court has held:
In determining loss of wage[-]earning capacity, we consider factors such as “the amount of training and education which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.” Thus, “determination should be made only after considering the evidence as a whole.”
DeLaughter v. S. Cent. Tractor Parts, 642 So.2d 375, 379 (Miss.1994) (citations omitted). Because the Commission was required to consider the evidence as a whole, including Howell’s loss of access to the job market, her difficulty securing permanent employment, and her continuing pain, we cannot say its determination was not based on substantial evidence.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE, P.J., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.

. Dr. Soriano’s given name is not supplied in the record.

. Neshoba General would calculate the apportionment as 69% of the loss, reasoning that prior to the instant injury, Howell was excluded from about 57% of the job market-afterward, 83%.