BARNES, J.,
 

 for the Court.
 

 ¶ 1. McKinley Mosby appeals the Sunflower County Circuit Court’s denial of additional workers’ compensation benefits for his permanent partial disability and subsequent medical treatments. Finding no error, we affirm.
 

 SUMMARY OF FACTS
 

 ¶ 2. Mosby was a truck driver for Farm Fresh Catfish Company (Farm Fresh) from 1991 to 1999. On January 14, 1999, Mosby was involved in an accident when his truck slid into a catfish pond; he injured his lower back as a result of the accident. Mosby claims that he was subsequently terminated from this job, as Farm Fresh was unable to provide him with any work within the restrictions and limitations assigned by his treating physicians. However, Farm Fresh argues that Mosby’s termination was due to the destruction of company property.
 
 [1]
 
 Over the next few years, Mosby worked for several companies, but he claims that due to his injury, he was unable to maintain employment. Farm Fresh contradicts Mosby’s claims, stating that some of the job terminations were due to job abandonment which was attributed to Mosby’s obtaining a better-paying job.
 

 Mosby’s History of Medical Treatment
 

 ¶ 3. Immediately following the accident, the nurse for Farm Fresh took Mosby to the local medical clinic where he was treated by Dr. Joe Pulliam. Approximately two weeks later, Mosby was treated at Delta Regional Medical Center with similar complaints. Mosby was referred to Dr. Frank Tilton, a neurologist in Greenville, who diagnosed Mosby with ruptured discs. Dr. Tilton referred Mosby to Dr. Rodney Frothingham, a neurosurgeon, also located in Greenville, Mississippi. Mosby was, once again, referred to another neurosurgeon, Dr. Lon Alexander, located in Jackson, Mississippi. Dr. Alexander recommended surgery, but Mosby resisted; so he was subsequently referred to Dr. Michael Steuer for pain management treatments.
 
 [2]
 
 Farm Fresh and its insurer, Liberty Mutual Fire Insurance Company (Liberty Mutual), admitted that the accident occurred within the course and scope of Mosby’s employment and paid temporary total disability benefits and the above-stated medical costs.
 

 
 *792
 
 ¶ 4. In 2000, Mosby moved to Baldwyn, Mississippi, and soon thereafter, he moved to Booneville, Mississippi. It was at this point that Mosby went outside of the original chain-of-referral and visited Dr. Erik Dukes, who is located in Booneville, Mississippi, for treatment. Dr. Dukes referred Mosby to Dr. George Hammitt, who then referred Mosby to Dr. Andrew Chiou, a neurosurgeon located in Tupelo, Mississippi. Chiou made the same diagnosis as Dr. Alexander. Again, Mosby resisted having surgery. Farm Fresh refused to pay for any medical expenses starting with his treatment by Dr. Dukes.
 

 Procedural History
 

 ¶ 5. Mosby filed a petition to controvert on April 5, 1999. Due to a change of Mosby’s counsel and numerous other delays, a hearing on the merits before an administrative law judge was not held until February 23, 2005. The administrative law judge issued an order on April 7, 2005, that stated: (1) Mosby was entitled to temporary, total disability benefits of $292.86 for those periods when Mosby was unable to work;
 
 [3]
 
 (2) Farm Fresh was financially responsible for the medical expenses stemming from treatment by Dr. Dukes and his referrals as Mosby had to abandon the chain-of-referral; and (3) Mosby was entitled to permanent disability benefits of $67.30 starting October 28, 1999, continuing for 450 weeks, as he sustained a loss of wage-earning capacity. On April 15, 2005, Farm Fresh filed a petition for review of the order with the Mississippi Workers’ Compensation Commission (Commission), followed by a motion to supplement the record. Prior to the matter being considered by the Commission, the administrative law judge conducted a second evidentiary hearing on March 1, 2006. The administrative law judge entered her second order on March 21, 2007, which summarily affirmed her previous findings. Soon thereafter, Farm Fresh filed another petition for review with the Commission. On December 19, 2007, the Commission affirmed the administrative law judge’s findings regarding the temporary total disability benefits and the reasonableness and necessity of Mosby’s medical treatment. However, the Commission reversed on the issue of the permanent partial disability based on its finding that Mosby failed to prove any permanent loss of wage-earning capacity as he had “managed to work at no less than ten different companies doing the same or similar work as before his injury, and making the same or better wages as before his injury.”
 

 ¶ 6. Mosby filed a petition for appeal and review with the Sunflower County Circuit Court on January 30, 2008. Farm Fresh had already filed a cross notice of appeal on January 25, 2008, on the issue of payment for Mosby’s subsequent medical treatment.
 
 [4]
 
 The circuit court, on July 31, 2008, affirmed the Commission’s disqualification of Mosby’s claim for permanent disability benefits; and it reversed on the issue of Mosby’s medical treatment received outside of the chain-of-referral, finding that Farm Fresh was not financially responsible for those expenses. Mosby appealed the circuit court’s order on August 8, 2008.
 

 STANDARD OF REVIEW
 

 ¶ 7. This Court’s review of decisions by the Workers’ Compensation Commission is limited, and we will only reverse a
 
 *793
 
 Commission’s order if it “is not based on substantial evidence, is arbitrary or capricious, or is based
 
 on an
 
 erroneous application of the law.”
 
 Goolsby Trucking Co., Inc. v. Alexander,
 
 982 So.2d 1013, 1019(¶ 15) (Miss.Ct.App.2008) (citation omitted). The purpose of our review of the facts on appeal is “to determine whether there is substantial credible evidence which would support the factual determination made by the Commission.”
 
 Id.
 
 at (¶ 16) (quoting
 
 Martinez v. Swift Transp.,
 
 962 So.2d 746, 750(¶ 16) (Miss.Ct.App.2007)). This Court is bound to accept the findings by the Commission if supported by substantial evidence, even if the evidence “would not be sufficient to convince us were we the fact[-]finders.”
 
 Id.
 

 I. Whether the circuit court erred in finding that Mosby was not totally disabled.
 

 ¶ 8. Mosby claims that, as he suffered a loss of wage-earning capacity, he has established a prima facie case that he is
 
 totally
 
 disabled. Farm Fresh counters that the wage statements included in the record show that, not only did Mosby not suffer any loss of wage-earning capacity, but he also enjoyed an increase in his wages.
 

 ¶ 9. We must first note that no order, either from the administrative law judge, the Commission, or the circuit court, found Mosby to be totally disabled. Rather, Mosby was found to be permanently partially disabled, and it is clear from the evidence presented that Mosby is not totally disabled. In order for a claimant to demonstrate permanent and total disability, he must make a diligent, yet unsuccessful, effort to obtain other gainful employment.
 
 Wal-Mart Stores, Inc. v. Patrick,
 
 5 So.3d 1119, 1123-24(¶ 11) (Miss.Ct.App.2008). This Court has also recently clarified the rule on determining whether a claimant is totally disabled finding “that the ability to earn post-injury wages, even significantly diminished post-injury wages, defeats a claim of permanent total disability.”
 
 Hill v. Mel, Inc.,
 
 989 So.2d 969, 972(¶ 14) (Miss.Ct.App.2008). As is evident from the table below, Mosby has been able to obtain employment at numerous jobs following his termination from Farm Fresh.
 

 [[Image here]]
 

 ¶ 10. As to the issue of
 
 permanent partial disability,
 
 this Court has found that a decision regarding the “loss of wage-earning capacity [is] ‘largely factual and [is] to be left largely to the discretion and estimate of the [C]ommission.’ ”
 
 *794
 

 Neshoba County Gen. Hosp. v. Howell,
 
 999 So.2d 1295, 1298(¶ 8) (Miss.Ct.App.2009) (quoting
 
 Bryan Foods, Inc. v. White,
 
 913 So.2d 1003, 1010(¶ 28) (Miss.Ct.App.2005)). In its determination of the “claimant’s loss of wage[-]earning capacity, the Commission should take into consideration all of the factual elements presented to it in order to arrive at its conclusion regarding the extent of the claimant’s disability.”
 
 Airtran, Inc. v. Byrd,
 
 953 So.2d 296, 301(¶ 11) (Miss.Ct.App.2007). If the claimant’s post-injury wages are equal to or exceed the pre-injury wages, then “a re-buttable presumption arises that the claimant has experienced no loss of wage-earning capacity.”
 
 Howell,
 
 999 So.2d at 1298(¶ 9) (citing
 
 Gen. Elec. Co. v. McKinnon,
 
 507 So.2d 363, 365 (Miss.1987)). In order “[t]o rebut this presumption, the claimant must show that the post-injury wages are an unreliable indicator of post-injury wage-earning capacity by evidence that may include an ‘increase in general wage levels since the time of accident; claimant’s own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings.’ ”
 
 Id.
 
 (quoting
 
 Howard Indus., Inc. v. Robinson,
 
 846 So.2d 245, 256(¶ 37) (Miss.Ct.App.2002)). The Mississippi Supreme Court has identified the factors that should be considered in determining whether a claimant has suffered a loss of wage-earning capacity. These include the claimant’s education and training, his inability to work, the failure to be hired elsewhere, the continuance of his pain, and any other related circumstances.
 
 McGowan v. Orleans Furniture, Inc.,
 
 586 So.2d 163, 167 (Miss.1991). Moreover, the claimant bears the burden of “showing medical impairment and that the medical impairment resulted in a loss of wage[-]earning capacity.”
 
 White,
 
 913 So.2d at 1009(¶ 26).
 

 ¶ 11. At the time of initial hearing before the administrative law judge, Mosby was employed by Nationwide. Although admitting that Mosby’s wages prior to his employment at Nationwide showed an increase, the administrative law judge commented that his wages at Nationwide had decreased. Therefore, she reasoned that Mosby had sustained a loss of wage-earning capacity and was entitled to permanent partial disability.
 
 [5]
 
 Mosby’s employment was eventually terminated at Nationwide for falsifying documents, as he stated on his application for employment that he did not suffer from chronic lower-back pain. When the administrative law judge conducted her second review based upon Farm Fresh’s supplementation of Mosby’s employment records, she affirmed her previous judgment, based upon Mosby’s “struggle” to maintain a permanent work position. The Commission reversed the administrative law judge’s ruling on this issue based on the fact that Mosby had managed to obtain continuous employment and that he had failed to prove any permanent loss of wage-earning capacity.
 

 ¶ 12. We find that there is substantial evidence to support the Commission’s findings on the issue of permanent partial disability. Mosby has not demonstrated that his post-injury earnings are temporary or unpredictable. Mosby’s wages have steadily increased since his employment with Farm Fresh, and he has not been unemployed for any significant period
 
 *795
 
 of time after his termination from Farm Fresh. Even though Mosby has stated that he experiences continuous pain, the pain has not prevented him from maintaining long-term employment. Mosby worked for Morgan Van Lines for nearly three years and was employed with Riverside for over two years as of the date of the Commission’s order.
 

 ¶ 13. Accordingly, we affirm on this issue.
 

 II. Whether Mosby is entitled to reimbursement for the medical treatment he received outside of the chain-of-referral.
 

 ¶ 14. Although the Commission found that Farm Fresh was financially responsible for medical expenses incurred by Mosby outside of the chain-of-referral, the circuit court reversed, finding the decision “erroneous and contrary to the overwhelming evidence.” Mosby claims that this holding constitutes error as the law provides for a claimant to change physicians if it is no longer reasonable for him to see his original treating physician. Mississippi Code Annotated section 71-3-15(1) (Rev. 2000) requires an employer to “furnish such medical, surgical, and other attendance or treatment, nurse and hospital service ... for such period as the nature of the injury or the process of recovery may require.” Further, the employee has “the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment.”
 
 Id.
 
 The statute also provides that:
 

 Referrals by the chosen physician shall be limited to one (1) physician within a specialty or subspecialty area. Except in an emergency requiring immediate medical attention, any additional selection of physicians by the injured employee or further referrals must be approved by the employer, if self-insured, or the carrier prior to obtaining the services of the physician at the expense of the employer or carrier.
 
 If denied, the injured employee may apply to the [Cjommission for approval of the additional selection or referral, and if the [Commission determines that such request is
 
 reasonable,
 
 the employee may be authorized to obtain such treatment at the expense of the employer or carrier.
 

 Id.
 
 (emphasis added). Therefore, under the statute, the employee has the right to choose one competent physician and such other specialist to whom he is referred by his physician.
 
 PDN, Inc. v. Loring,
 
 843 So.2d 685, 688(¶ 10) (Miss.2003). However, “[tjreatment rendered by a physician or referrals from a physician other than the original treating physician that have not been approved are not the responsibility of the employer or its insurance carrier.”
 
 Wesson v. Fred’s Inc.,
 
 811 So.2d 464, 467(¶ 9) (Miss.Ct.App.2002).
 

 ¶ 15. There is no dispute that Mosby went outside of the chain-of-referral in his visits to Drs. Duke, Hammitt, and Chiou. However, Mosby argues for the first time on appeal that his medical expenses should be paid by Farm Fresh as the treatment constituted an “emergency” pursuant to section 71-3-15(1), due to the fact that his referred pain management doctor, Dr. Steuer, had relocated. Mosby reasons that it was unreasonable to expect him to obtain treatment at Dr. Steuer’s new location in Southaven. In discussing the workers’ compensation statute as it relates to medical expenses, the Mississippi Supreme Court has defined an emergency as a situation which does not allow for a “reasonable alternative consistent with the preservation of life or irreparable injury from delay.”
 
 Ingalls Shipbuilding Corp. v. Holcomb,
 
 217 So.2d 18, 21 (Miss.1968). We find that Mosby’s obtaining medical
 
 *796
 
 treatment by a doctor outside of the chain-of-referral merely because it was more convenient to his home did not constitute an “emergency” as contemplated by the statute.
 

 ¶ 16. “It is an evident requirement of [section] 71-3-15 that the selection of additional treating physicians must be through a referral by the designated physician.”
 
 Fleming Enters., Inc. v. Henderson,
 
 741 So.2d 309, 316(¶ 27) (Miss.Ct.App.1999). While it may be understandable that Mosby did not to want to drive a long distance to see any of his previously-approved physicians, it does not excuse him from neglecting to obtain approval for the treatment received outside of the chain-of-referral. “When one party is responsible for another party’s expenses, it is critical that some controls exist.”
 
 Wesson,
 
 811 So.2d at 468(¶ 15). There was no serious effort by Mosby to obtain approval for the medical treatment at issue, except to assert that the nurses/administrative staff at the respective physician’s offices called to obtain approval on his behalf. He testified at the February 23, 2005, hearing that, when he went to the respective physicians’ offices, he told them that he had a workers’ compensation claim and that the physicians’ office staff called Liberty Mutual, which denied the claim. However, the medical records from Dr. Hammitt and Dr. Chiou reflect that Mosby listed Blue Cross/Blue Shield as his insurance carrier.
 
 [6]
 
 Additionally, Dr. Chiou testified in his deposition that Mosby did not inform him that the treatment was for injuries arising from a workers’ compensation claim. There is nothing in the record to suggest that Mosby himself attempted to make contact with Liberty Mutual, either by phone or correspondence, to obtain approval.
 

 ¶ 17. Alternatively, Mosby claims that, by making these medical bills part of his claim, he received the Commission’s approval pursuant to section 71-3-15(1) for these expenses in its December 19, 2007, order. The statute allows a claimant to apply to the Commission for “approval of the additional selection or referral, and if the [C]ommission determines that such request is reasonable, the employee may be authorized to obtain such treatment at the expense of the employer or carrier.” Miss.Code Ann. § 71-3-15(1). In
 
 Patrick,
 
 5 So.3d 1119 at (¶ 21), this Court held that section 71-3-15(1) requires that
 
 prior
 
 approval must be obtained from either the employer
 
 or the Commission
 
 for physician referrals. We have already concluded that Mosby never made a serious attempt to obtain approval from Farm Fresh or Liberty Mutual
 
 prior
 
 to receiving treatment from Drs. Duke, Hammitt, and Chiou. Additionally, it is clear that Mosby never obtained approval from the Commission prior to said medical treatment. Consequently, we find that this claim by Mosby is without merit.
 

 ¶ 18. We affirm the judgment of the circuit court as we can find no substantial evidence to support the Commission’s finding that Farm Fresh should pay for Mos-by’s medical expenses outside of the chain-of-referral.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . There is no indication in the record if this is referencing the truck that slid into the pond or other property.
 

 [2]
 

 . According to Mosby, Dr. Steuer moved to Southaven, Mississippi, but there is no indication when this occurred. However, the medical records show that Mosby's last treatment by Dr. Steuer was on June 15, 2000.
 

 [3]
 

 . These periods were January 14, 1999, until May 27,1999, and August 15,1999, until September 24, 1999.
 

 [4]
 

 . Mosby's petition and Farm Fresh’s cross notice of appeal had already been submitted to the Commission on January 8 and January 10, 2008, respectively.
 

 [5]
 

 . The administrative law judge calculated Mosby’s actual average weekly wages from Nationwide to be $500.35, which was $100.90 less than what he earned at Farm Fresh. After the hearing, Farm Fresh, in its supplementation of the record, showed that Mosby earned $848.25 per week from Nationwide.
 

 [6]
 

 . This was Morgan Van Lines's insurance carrier.