KING, C.J.,
 

 for the Court:
 

 ¶ 1. Rebecca Gill was injured on the job and thereafter applied for benefits through the Mississippi Workers’ Compensation Commission (the Commission). The administrative law judge (ALJ) found that Gill had sustained a permanent-partial disability and suffered a twenty-percent loss of wage-earning capacity. The case was appealed to the Commission, and the Commission amended the ALJ’s order, awarding Gill only a ten-percent loss of wage-earning capacity. Both parties appealed to the trial court, and the trial court affirmed the Commission’s ruling. Aggrieved, Gill appeals raising one issue— whether the trial court erred by affirming the Commission’s reduction of her benefits. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Harrah’s Entertainment, Incorporated (Harrah’s) hired Gill in November 2001 to work as a security officer. During her time at Harrah’s, Gill was promoted to a lead security officer position.
 

 ¶3. On July 2, 2003, Gill sustained a back injury on the job while attempting to lift a five-gallon gas can. Gill reported the injury and sought treatment. In the beginning, Gill received conservative treatment. However, the conservative treatment failed to alleviate her complaints of severe back pain. As a result, Gill opted to undergo back surgery, which was performed by Dr. Laverne Lovell on November 26, 2003.
 

 ¶ 4. Following the surgery, Gill returned to work in February 2004 on light duty. Her complaints of pain persisted. On August 17, 2004, Dr. Lovell found that Gill had reached maximum medical improvement, and she was placed on a thirty-five-pound weight restriction. In September 2004, Harrah’s terminated Gill stating that the company could not ensure her safety if she remained in her current position and that there were no permanent light-duty positions available.
 

 ¶ 5. Thereafter, Gill filed a petition to controvert on September 15, 2004. The parties stipulated that: (1) Gill sustained a work-related back injury on July 2, 2003; (2) at the time the injury, Gill’s weekly wage was $379.52; (3) Harrah’s provided all medical treatment and temporary benefits to which Gill was entitled; and (4) Gill reached maximum medical improvement on August 17, 2004. Gill argued that she had sustained a permanent disability that prevented her from finding a comparable job after her termination from Harrah’s. She stated that her current salary was $129 less per month than the wages she earned with Harrah’s. Conversely, Har-rah’s denied that Gill was permanently disabled and that Gill had suffered any loss of wage-earning capacity. The following evidence was presented to the ALJ in regard to Gill’s petition to controvert.
 

 A. Work History
 

 ¶ 6. During the hearing, Gill expounded upon her education and work history. Gill obtained her high school diploma in 1981, and she completed Emergency Medical
 
 *1229
 
 Technician (EMT) courses at a community college in 1995.
 

 ¶ 7. Thereafter, Gill held the following jobs: a security EMT for Hollywood Casino from May 1995 to November 1997, a seller of manufactured homes for Oakwood Homes from November 1997 to January 1999, a deli manager at Fast Lane from January 1999 to May 2000, and a bookkeeper for Baker & Sons Electric from May 2000 to October 2001. As previously mentioned, Gill was employed by Harrah’s as a security officer, and her employment lasted from November 2001 to September 2004.
 

 ¶ 8. Gill was forty-one years old when she was terminated by Harrah’s. After her termination, it took Gill eight months to find other employment. She testified that she allowed her EMT registration to lapse because she could no longer perform the physical aspects of the job. Gill went back to work for Baker & Sons Electric as a bookkeeper and was paid $250 per week. After Gill’s employment ended with Baker
 
 &
 
 Sons, she obtained employment with Memphis Auto Center making the same wage.
 

 ¶ 9. Ty Pennington, a vocational rehabilitation expert, also testified regarding Gill’s efforts to find employment. Pennington testified that based on Gill’s education and work history, she classified as a person who could earn above minimum wage. The vocational rehabilitation center found several jobs for Gill to apply for, and the salaries for those jobs ranged from $8 to $10 per hour. Pennington followed up with the companies to see if Gill had submitted an application. Only one company indicated that it had an active application for Gill.
 

 ¶ 10. Gill explained that she submitted an application for several of the jobs. She also stated that she did not apply to one job because of the driving requirement, and she did not apply to a second job because she could not find its location.
 

 B. Medical Evaluation
 

 ¶ 11. Dr. Lovell treated Gill’s back injury and performed her surgery. In his October 2005 deposition, Dr. Lovell testified that on August 31, 2003, Gill had full strength, normal sensory and reflexes, normal gait, and good flexibility. Thus, despite Gill’s subjective complaints of back pain, Dr. Lovell gave her a permanent-partial impairment rating of zero percent.
 

 ¶ 12. Two weeks later, Gill experienced pain while she was preparing to go to work one morning. She returned to Dr. Lovell’s office with those complaints. A physical exam revealed that Gill had developed pain in her thighs. However, Dr. Lovell noted that Gill did not exhibit any outward signs of pain, and this continued throughout Dr. Lovell’s eight-month treatment of Gill. Dr. Lovell believed that Gill had magnified her symptoms. He noted on many occasions that Gill complained of pain; however, she did not exhibit any outward signs of pain. Also, although Gill walked with a cane, Dr. Lovell noted that she did not bear any weight on the cane.
 

 ¶ 13. Because of Gill’s persistent complaints of pain, Dr. Lovell ordered an MRI. The MRI revealed that she had spondylo-listhesis, a slip in the vertebra, and bilateral spondylolisthesis. Dr. Lovell stated that this was a hereditary or congenital condition. Dr. Lovell opined that Gill’s congenital condition was not work related. However, as a result of her work-related injury, Gill sustained a herniated disk. Using the American Medical Association’s guidelines for impairment, Dr. Lovell assigned Gill a ten-percent permanent-partial impairment rating.
 

 ¶ 14. Dr. Lovell also had Gill undergo a functional-capacity exam. Based on the
 
 *1230
 
 results, he assigned Gill a thirty-five-pound weight restriction. Dr. Lovell testified that Gill did not put forth full effort in her functional-capacity exam. However, he gave her the benefit of the doubt and accepted the weight restriction. Dr. Lo-vell testified that Gill smoked excessively, which hindered her post-operative healing. Dr. Lovell stated that Gill went through her pain medication very quickly, and her incessant complaints of pain became a burden on his office. Eventually, Dr. Lovell had to refer Gill to a pain specialist since he did not deal with the treatment of long-term pain.
 

 ¶ 15. In December 2007, Dr. Lovell submitted a letter to clarify his opinion regarding Gill’s weight restrictions. In this letter, Dr. Lovell stated that Gill’s herniated disc required a discectomy, which he attributes to the work-related injury. Dr. Lovell explained that, generally, patients do not have restrictions following a simple discectomy. Thus, he attributed Gill’s weight restriction to her preexisting condition.
 

 C. Proceedings Below
 

 ¶ 16. Based on the aforementioned evidence, the ALJ found that Gill had sustained a permanent-partial disability and had suffered a twenty-percent loss of wage-earning capacity. The ALJ awarded Gill $50.60 per week to be paid for 450 weeks. Aggrieved, both Gill and Harrah’s appealed the ALJ’s decision to the Commission.
 

 ¶ 17. The Commission found that “[biased on the Claimant’s age, education, work experience, and the ten[-]percent impairment rating assigned by Dr. Laverne Lovell, the Commission finds that [the] Claimant sustained only a ten-percent loss of wage-earning capacity as a result of the work[-related] injury.” Thus, the Commission amended the ALJ’s order to reflect the reduction, awarding Gill $25.30 per week for 450 weeks.
 

 ¶ 18. Further aggrieved, both parties appealed to the Circuit Court of Tunica County. The trial court affirmed the Commission’s decision. Thereafter, Gill timely filed her notice of appeal.
 

 ANALYSIS
 

 ¶ 19. In workers’ compensation cases, the Commission is the ultimate fact-finder.
 
 Whirlpool Corp. v. Wilson,
 
 952 So.2d 267, 271 (¶ 15) (Miss.Ct.App.2006). Thus, we give deference to the Commission’s decision and will not disturb it on appeal absent a finding that the decision was “unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.”
 
 Id.
 

 ¶ 20. Gill argues that the trial court erred by affirming the Commission’s finding that she sustained only a ten-percent loss of wage-earning capacity. Gill maintains that the Commission failed to consider the substantial pay decrease that she sustained following her termination from Harrah’s. Conversely, Harrah’s claims that Gill failed to establish even a ten-percent loss of wage-earning capacity and maintains that the Commission’s decision was erroneous. Alternatively, Har-rah’s argues that Gill’s award should not be increased.
 

 ¶ 21. Pursuant to Mississippi Code Annotated section 71-3-3(i) (Rev.2000), “ ‘[disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” If the claimant proves that she is disabled and that disability is not specifically addressed by statute, then her disability is measured
 
 *1231
 
 by a loss of wage-earning capacity.
 
 Havard v. Titan Tire Corp. of Natchez,
 
 919 So.2d 995, 998-99 (¶ 16) (Miss.Ct.App.2005) (citing
 
 Georgia Pacific Corp. v. Taplin,
 
 586 So.2d 823, 828 (Miss.1991)). Such a determination is essentially “left to the uncertainty of a factual estimate which is necessarily lacking in mathematical accuracy.”
 
 Robinson v. Packard Elec. Div.,
 
 523 So.2d 329, 331 (Miss.1988) (citation omitted).
 

 ¶ 22. Thus, Gill bore the burden to prove that she suffered a total disability as a result of a work-related injury and a loss of wage-earning capacity due to that disability.
 
 See Leslie v. SAIA Motor Freight,
 
 970 So.2d 218, 221 (¶ 12) (Miss.Ct.App.2007). “Once a prima facie case for total disability has been established, the employer bears the burden of proving that the claimant has suffered only a partial disability or no loss of wage-earning capacity.”
 
 Goolsby Trucking Co. v. Alexander,
 
 982 So.2d 1013, 1020 (¶ 19) (Miss.Ct.App.2008) (quoting
 
 Whirlpool Corp.,
 
 952 So.2d at 272 (¶ 19)). The ultimate determination is a question of fact for the Commission to decide.
 
 Mosby v. Farm Fresh Catfish Co.,
 
 19 So.3d 789, 793 (¶ 10) (Miss.Ct.App.2009).
 

 ¶ 23. Dr. Lovell’s testimony established that Gill had sustained a herniated disc from her work-related injury, which he assigned a ten-percent impairment rating. Gill submitted proof that her post-injury wages were approximately thirty percent less than her pre-injury wages. Gill believes that her award should be equal to her loss in wages. However, in addition to Gill’s actual loss of wages, the Commission may consider other factors in its determination.
 
 See Mosby,
 
 19 So.3d at 794 (¶ 10). In this case, the Commission considered Gill’s age, education, work experience, Pennington’s testimony, and the ten-percent impairment rating assigned by Dr. Lovell.
 

 ¶ 24. Harrah’s argues that Gill is not impaired because her complaints of pain were not substantiated by objective medical evidence; Gill did not have any work restrictions that were attributable to her alleged injury; and her job search was a sham. There is some evidence that Gill may have exaggerated complaints of pain and that she did not fully participate in her functional-capacity exam. Dr. Lovell expressed concern that Gill was exaggerating her pain. However, he also stated that there were times when Gill’s outward demeanor matched her complaints of pain. There is also some evidence to suggest that Gill did not exhaust her job opportunities through the vocational rehabilitation clinic. However, any “[d]oubtful claims should be resolved in favor of compensation, so as to fulfill the beneficial purposes of statutory law.”
 
 Univ. of Miss. Med. Ctr. v. Rainey,
 
 926 So.2d 938, 940 (¶ 6) (Miss.Ct.App.2006) (citing
 
 Sharpe v. Choctaw Elec. Enter.,
 
 767 So.2d 1002, 1006 (¶ 19) (Miss.2000)). It is abundantly clear that the Commission gave Gill the benefit of the doubt and relied heavily upon the ten-percent impairment rating when making its decision to reduce her award of benefits.
 

 ¶ 25. Based on the foregoing, we find that the Commission’s decision to reduce Gill’s award of permanent-partial disability benefits from a twenty-percent loss of wage-earning capacity to a ten-percent loss of wage-earning capacity was supported by substantial evidence. Thus, we affirm the Commission’s award of $25.30 per week to be paid for 450 weeks. This argument is without merit.
 

 ¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF
 
 *1232
 
 THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.