BARNES, J.,
 

 for the Court:
 

 ¶ 1. Irene Wright, a certified nurse’s assistant (CNA) employed by the University of Mississippi Medical Center (UMMC), suffered a back and neck injury while on the job. Wright filed a petition to controvert with the Mississippi Workers’ Compensation Commission (Commission). After receiving temporary disability benefits and medical payments, she returned to work. However, finding she could no longer perform her duties as a CNA, she quit and was referred to a vocational counselor. Almost two years later, Wright obtained other employment with UMMC as a file clerk. She subsequently quit her position as file clerk after five months, claiming she was unable to maintain the job due to her injury. Wright contended she was entitled to permanent disability benefits due to loss of wage-earning capacity. Her claim was denied by the Commission, and on appeal, the Hinds County Circuit Court upheld the Commission’s findings. Finding no error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On March 7, 2002, Wright, a twenty-nine-year old CNA employed by UMMC in Jackson, Mississippi, suffered a neck and back injury when she and five other employees attempted to move a severely overweight patient. On September 16, 2003, Wright filed a petition to controvert, and UMMC paid temporary total disability benefits totaling $23,388.13 and medical payments of $14,859.30 from March 13, 2002, until April 4, 2004. However, Wright maintained that she was entitled to permanent disability due to a loss of wage-earning capacity.
 

 ¶ 3. On March 19-20, 2003, Dr. Rahul Vorha conducted a functional capacity evaluation (FCE) on Wright. His report stated that it was difficult to determine what Wright’s abilities and limitations were because she was “self-limited by complaints of low back and neck pain.” On July 25, 2003, Dr. Denzil Robertson, Wright’s internist, stated in a memo that Wright had reached “maximum treatment benefit” and that she could return to work “in a sedentary occupation, but is prohibited from duties that might stress her back[.]”
 

 ¶ 4. In May 2004, Wright returned to work as a CNA; however, after approximately two months, she quit because the job requirements were too strenuous on her back. She was referred to a vocational-rehabilitation counselor, Bruce Brawner, for assistance in obtaining other employment.
 

 ¶ 5. Wright was discharged from physical therapy on February 2, 2005. Dr. Vo-rha conducted a second FCE on September 7-8, 2005. As in the 2003 report, Dr.
 
 *80
 
 Vorha concluded that Wright was “self-limited by complaints of pain stopping herself on all weighted capacities, trunk bending” and noted inconsistencies. Dr. Vorha released Wright from his care on December 15, 2005, allowing her to return to work with a fifty-pound lifting restriction.
 

 ¶ 6. Wright began working as an Avon representative. Wright also obtained a job with UMMC as a file clerk and worked at this position from April 25, 2006, to September 15, 2006. The file-clerk position required sitting at a desk and standing at a copier; no heavy lifting was involved. However, Wright left the job as a file clerk, claiming her injury had resurfaced, and she was unable to perform her duties. She consulted with a neurosurgeon, Dr. Adam Lewis, in October 2006, who recommended rehabilitation and physical therapy.
 

 ¶ 7. Brawner, the vocational counselor, continued to work with Wright and presented her with forty-four potential job opportunities between February 2007 and June 2007. Brawner conducted follow-up on several of the potential employers, but the majority of them had no knowledge of Wright or whether she had filled out an application. One company did say that it had her resume and was interested in talking to her. At the subsequent hearing regarding her claim for benefits, Wright stated that she was currently employed as a part-time cashier at the gift shop her husband owns and earned approximately $100 per week. She also still worked part-time with Avon.
 

 ¶ 8. A hearing on Wright’s request for permanent disability benefits was held on September 21, 2009.
 
 [1]
 
 The administrative judge denied Wright’s claim on February 25, 2010, finding that Wright “failed to prove that she suffered any permanent disability and/or loss of wage-earning capacity.” Wright filed a petition for review, and the Commission affirmed the judge’s findings on June 10, 2010.
 

 ¶9. Wright appealed the Commission’s order to the Hinds County Circuit Court, which affirmed the decision, finding it “was supported by substantial evidence.” Upon review, we affirm the circuit court’s judgment.
 

 STANDARD OF REVIEW
 

 ¶ 10. “Absent an error of law, this Court will not overturn a decision of the Mississippi Workers’ Compensation Commission if the Commission’s decision is supported by substantial credible evidence.”
 
 Wal-Mart Stores, Inc. v. Patrick,
 
 5 So.3d 1119, 1128 (¶ 10) (Miss.Ct.App.2008) (citing
 
 Congleton v. Shellfish Culture, Inc.,
 
 807 So.2d 492, 495 (¶ 8) (Miss.Ct.App.2002)). However, we will reverse the decision if the order “is clearly erroneous and contrary to the overwhelming weight of the evidence.”
 
 Id.
 
 (citation omitted).
 

 DISCUSSION
 

 ¶ 11. Wright claims that the Commission’s findings are against the weight of the evidence, and she should have been awarded permanent benefits for loss of wage-earning capacity. There is no dispute Wright cannot perform her duties as a CNA. However, we find no merit to Wright’s assertion that she has demonstrated a loss of wage-earning capacity.
 

 ¶ 12. The Commission views the evidence as a whole to “determine the fact and extent of a claimant’s loss of wage-
 
 *81
 
 earning capacity[.]”
 
 Scott v. KLLM, Inc.,
 
 37 So.3d 713, 717 (¶ 16) (Miss.Ct.App.2010) (citing
 
 DeLaughter v. S. Cent. Tractor
 
 Parts, 642 So.2d 375, 379 (Miss.1994)). Factors to be considered are the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.
 
 Mixon v. Greywolf Drilling Co., LP,
 
 62 So.3d 414, 419 (¶ 16) (Miss.Ct.App.2010) (citing
 
 McGowan v. Orleans Furniture, Inc.,
 
 586 So.2d 163, 167 (Miss.1991)). However, “[t]he claimant bears the burden of proving a loss of wage-earning capacity.”
 
 Int’l Staff Mgmt. v. Stephenson,
 
 46 So.3d 367, 373 (¶24) (Miss.Ct.App.2010) (citing
 
 McCarty Farms, Inc. v. Kelly,
 
 811 So.2d 250, 254 (¶ 11) (Miss.Ct.App.2001)).
 

 ¶ 13. “If the claimant’s post-injury wages are equal to or exceed the pre-injury wages, then ‘a rebuttable presumption arises that the claimant has experienced no loss of wage-earning capacity.’ ”
 
 Mosby v. Farm Fresh Catfish Co.,
 
 19 So.3d 789, 794 (¶ 10) (Miss.Ct.App.2009) (quoting
 
 Neshoba County Gen. Hosp. v. Howell,
 
 999 So.2d 1295, 1298 (¶ 9) (Miss.Ct.App.2009)). Wright claims she had averaged a weekly income of $321 as a CNA; yet, her salary as a file clerk was significantly lower at an hourly rate of $6.12. Testimony during Wright’s deposition clarified that her CNA salary contained a differential for night shifts; therefore, she occasionally made upward of approximately $8.05 an hour. However, a document from UMMC’s Human Resources Department, dated April 17, 2006, shows that Wright’s base salary as a CNA was $7.16 an hour and that she was given this same salary as a file clerk. Furthermore, at her deposition, Wright was asked: “And this shows you were paid [as a file clerk] $7.38 an hour. Does that sound about right, that you were paid that?” Wright replied: “Yes, sir.” The record also shows Wright got a raise on June 1, 2006, to $7.65 an hour. Therefore, we find her claim, that her salary as a file clerk was only $6.12 an hour, is not supported by the evidence presented to the Commission.
 

 ¶ 14. Although Wright claimed her injury prevented her from continuing to work as a file clerk, Wright’s supervisor for the file-clerk position, Bridget Booker, said that the job did not include any heavy lifting. It merely required sitting at a desk and standing at the copier. Also, the files were rarely more than three pounds each. Brawner, the vocational counselor, testified that “the job fell within all the guidelines, the FCE as embraced by Dr. Robertson and by Dr. Vorha.” However, Wright quit without notice in September 2006, saying she was in pain. Booker advised Wright to go to the emergency room, but Wright said she had her own doctor. Booker testified Wright regularly wore high heels to work, although it was not required for her to do so. Also, no physician who examined Wright indicated she could not perform the duties required by the file-clerk position.
 

 ¶ 15. Brawner attempted to assist Wright in finding employment by providing her with information on forty-four potential employers. Wright has a high school education and received training as a nurse’s assistant through job corps. The majority of the jobs provided by Brawner had a listed salary equal to or higher than Wright’s CNA wages and were desk/sedentary positions. In fact, one of the job opportunities presented to Wright had a starting annual salary of approximately $30,000. Wright stated at the hearing that she went to several of the employers, but they did not let her fill out an application. However, when Brawner contacted several of the employers to follow up, they could
 
 *82
 
 not verify whether she had completed an application or had contacted them.
 

 ¶ 16. Finally, at the hearing, Wright confirmed that, since 2008, she has made approximately $75 to $100 per week from her Avon business. Further, although Wright’s 1099-MISC income federal tax form from Avon for 2006 showed she received $0 in non-employee compensation, her 2006 federal income tax return showed that she received $9,531.00 in net profit business income from Avon.
 

 CONCLUSION
 

 ¶ 17. There is substantial evidence Wright is able to work and earn a salary equal to her CNA salary. Consequently, we find the Commission’s denial of permanent disability benefits was not against the overwhelming weight of the evidence, and we affirm the judgment of the circuit court.
 

 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.
 

 [1]
 

 . Wright filed seven requests for extension of discovery between July 1, 2004, and October 19, 2006.